Syllabus.

MICHAEL RIGNEY

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa March 18, 1881—Rehearing denied March Term, 1882.*

1. ACTION—*where none lies for an injury.* Where a thing not *malum in se* is authorized to be done by a valid act of the legislature, and it is performed with due care and skill, in strict conformity with the provisions of the statute, its performance can not be made the ground of an action. In such case the statute affords complete indemnity to those acting under its authority, notwithstanding the injury complained of would, in the absence of the statute, be actionable at common law..

2. EMINENT DOMAIN — *"property,"* as used in constitution, defined. "Property," in its appropriate sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects, and generally to the exclusion of all others, and doubtless this is substantially the sense in which the word is used in the constitution, as to the taking or damaging of private property for the public use. But the word is often used to indicate the subject of the property or the thing owned.

3. SAME—*what is a "taking" of private property.* Up to the time of the adoption of the present constitution it was the settled doctrine of this court that any actual *physical* injury to private property, by reason of the erection, construction or operation of a public improvement in or along a public street or highway, whereby the appropriate use or enjoyment of the property was materially interrupted, or its value substantially impaired, was regarded as a "taking" of private property, within the meaning of the constitution, to the extent of the damages thereby sustained, and actions for such injuries were uniformly sustained. But the remedy was restricted to such cases of direct physical injury.

4. SAME—*rights under constitution of 1848, as extended by that of 1870.* That restriction of the remedy of the owners of private property to cases of actual physical injury to the property, was under the constitution of 1848, which simply provided that private property should not "be taken or applied to public use," without just compensation, etc. The constitution of 1870, however, provides that "private property shall not be taken *or damaged* for public use without just compensation," thus affording redress in cases not provided for by the constitution of 1848, and embracing every case where there is a direct physical obstruction or injury to the right of user or enjoyment of private property, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the

Brief for the Appellant.

common law, would, in the absence of any constitutional or statutory provision, give a right of action.

5. SAME—*former decisions.* Any expressions used in the opinions of this court in *Stetson* v. *Chicago and Evanston R. R. Co.* 75 Ill. 74, and *Chicago, Milwaukee and St. Paul R. R. Co.* v. *Hall,* 90 Ill. 42, which may seem to restrict the remedy of owners of private property, as given by the present constitution, to cases where there has been a direct physical injury to the property, are not to be accepted as embodying the views of the court on that subject.

6. SAME—*limitation of the rule under constitution of 1870.* But while the present constitution was intended to afford redress in a class of cases for which there was no remedy under the old constitution, still it was not intended to reach every possible injury occasioned by a public improvement. The building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, but that is a case of *damnum absque injuria.*

7. So, in order to authorize a recovery by an individual for an injury to his property by the construction of a public improvement under authority of a statute, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally, and which by the common law, in the absence of any constitutional or statutory provision, would have given a right of action.

8. SAME—*as to the particular case.* Where a city constructed a viaduct or bridge on a public street, near its intersection with another street, thereby cutting off access to the first named street from the plaintiff's house and lot over and along the street intersected, except by means of a pair of stairs, whereby the plaintiff's premises fronting on the latter street and near the obstruction were permanently damaged and depreciated in value, by reason of being deprived of such access, it was *held,* the city was liable to the plaintiff in damages for the injury.

| | |
|---|---|
| 102 | 64 |
| 102a | 7236 |
| 102 | 64 |
| 201 | 7478 |
| e201 | 7479 |
| 102 | 64 |
| 203 | 4572 |
| 204 | 3583 |
| 108a | 2 15 |
| 102 | 64 |
| 212 | 1411 |
| e212 | 7412 |
| 212 | 8416 |
| 114a | 8227 |

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Messrs. STILES & LEWIS, for the appellant:

If there is evidence tending to establish the plaintiff's right to recover, it is error to instruct the jury to find for the defendant. *Pemberton* v. *Williams,* 87 Ill. 15; *Guerdon* v. *Corbett,* 87 id. 272; *Hubner* v. *Feige,* 90 id. 208.

Property consists of certain rights in things secured by law. These rights are usually defined to be the right of user, the right of exclusion, and the right of disposition. In a strict sense land is not property, but the subject of property. 3 Bentham's Works, (Edinburg,) 1843, p. 221; *Eaton* v. *Railroad*, 51 N. H. 504; *Morrison* v. *Sample*, 6 Binn. 94; 2 Austin's Jurisprudence, sec. 836.

That this is the sense of the word as used in the constitution, see *Eaton* v. *B. M. and C. R. R. Co.* 51 N. H. 504; *Wynehamer* v. *People*, 13 N. Y. 378; *Walker* v. *O. C. W. R. R. Co.* 103 Mass. 10; *Thompson* v. *Androscoggin Imp. Co.* 54 N. H. 545; *Evansville and Crawfordsville R. R. Co.* v. *Dick*, 9 Ind. 433; *Lee* v. *Pembroke Iron Co.* 57 Me. 481.

The water of a stream can not be obstructed or diverted for the purpose of supplying a town or feeding a canal, without compensation is made to those who are injured. *Stein* v. *Burden*, 24 Ala. (N. S.) 130; *Burden* v. *Stein*, 27 id. 104; *Denslow* v. *New Haven and Northampton Co.* 16 Conn. 98; *Heilman* v. *Union Canal Co.* 50 Pa. St. 268.

Any injury to land which deprives the owner of the ordinary use of it, is equivalent to a taking of the land. *Hooker* v. *New Haven and Northampton Co.* 14 Conn. 146; *Same* v. *Same*, 15 id. 312; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166; *Arimond* v. *Green Bay Co.* 31 Wis. 316; *Pettigrew* v. *Village of Evansville*, 25 id. 223; *Bowman* v. *City of New Orleans*, 27 La. Ann. 501; *Nevins* v. *City of Peoria*, 41 Ill. 502; *City of Aurora* v. *Gillett*, 56 id. 132; *Same* v. *Keed*, 57 id. 29; *City of Jacksonville* v. *Lambert*, 62 id. 519; *City of Dixon* v. *Baker*, 65 id. 518; *Gillham* v. *Madison County R. R. Co.* 49 id. 484; *T. W. and W. Ry. Co.* v. *Morrison*, 71 id. 616.

That the word "damaged," in the constitution, is equivalent to the words "injuriously affected," or "injured," see *Hall* v. *Mayor of Bristol*, L. R. 2 C. P. 322; *East and West India Docks Co.* v. *Gattke*, 3 McN. & G. 155; *New River Co.* v. *Johnson*, 2 E. & B. 434; 105 E. C. L. R. 434; *Rickett's case,*

2 Eng. and Irish App. 193; *Columbia Delaware Bridge Co.* v. *Geisse,* 35 N. J. Law, 558; *Ashby* v. *White,* 1 Smith's L. Ca. 252; *Queen* v. *Eastern Counties Ry. Co.* 2 A. & E. N. S. 347; 42 E. C. L. R. 706; *Queen* v. *Great Northern Ry. Co.* 14 Q. B. N. S. 25; 68 E. C. L. R. 24; *Glover* v. *Staffordshire Ry. Co.* 16 Q. B. 912; *Wood* v. *Stourbridge Ry. Co.* 16 C. B. N. S. 222; *Eagle* v. *Charing Cross Ry. Co.* 2 L. R. C. P. 638; *Queen* v. *Vestry of St. Luke's,* L. R. 6 Q. B. 572.

This court has decided that damages done to abutting property by obstructing access thereto, by raising or lowering the grade of the street in front of it, are within the scope of the constitutional provision. *Brereton's case,* 67 Ill. 477; *Winkel's case,* 77 id. 56; *Eaton's case,* 83 id. 535.

Such damages were not recoverable prior to 1870. *Moses* v. *Ry. Co.* 21 Ill. 516; *Roberts* v. *City of Chicago,* 26 id. 249; *Murphy* v. *Chicago,* 29 id. 279; *City of Quincy* v. *Jones,* 76 id. 231.


Mr. FRANCIS ADAMS, for the appellee:

The city having lawful authority to construct the viaduct, is not liable for making the same, using due care and skill. Cooley on Const. Lim. 542, and notes; Dillon on Mun. Corp. sec. 781; *Northern Transportation Co.* v. *Chicago,* 99 U. S. 635; *Richardson* v. *Vermont Central R. R. Co.* 25 Vt. 465; *O'Connor* v. *Pittsburg,* 18 Pa. St. 187; *Roberts* v. *Chicago,* 26 Ill. 249; *Murphy* v. *Chicago,* 29 id. 280; *City of Quincy* v. *Jones et al.* 76 id. 238; *Chicago, Burlington and Quincy R. R. Co.* v. *McGinnis,* 79 id. 269.

The construction of the viaduct and its approaches was a mere elevation of the grade of the street, which the city was authorized to make, and in the absence of negligence there is no liability. *Roberts* v. *Chicago,* 26 Ill. 249; *Nevins* v. *City of Peoria,* 41 id. 514; *O'Conner* v. *Pittsburg,* 18 Pa. St. 187; *City of Chicago* v. *Rumsey,* 87 Ill. 363.

Lands merely injuriously affected are not *taken*, within the meaning of the constitution. *Richardson et al.* v. *Vermont Central R. R. Co.* 25 Vt. 475; Cooley's Const. Lim. 541–2.

That appellant was not entitled to recover by reason of the words "or damaged," in sec. 13, art. 2, of the constitution, see *Nevins* v. *City of Peoria*, 41 Ill. 514; *City of Quincy* v. *Jones et al.* 76 id. 231; *City of Shawneetown* v. *Mason et al.* 82 id. 337.

As to the proper meaning of the word "damaged:" Bouvier's Law Dic.; Burrill's Law Dic.; Broom's Maxims, 195.

There being no direct physical injury, appellant can not recover. *Stone* v. *Fairbury, Pontiac and Northwestern R. R. Co.* 68 Ill. 394; *Stetson* v. *Chicago and Evanston R. R. Co.* 75 id. 74; *Chicago* v. *Rumsey*, 87 id. 348; *C. C. and St. Paul R. R. Co.* v. *Hall*, 90 id. 42; *C. B. and Q. R. R. Co.* v. *McGinnis*, 79 id. 273.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action on the case, instituted by appellant against appellee, in the circuit court of Cook county, on the 14th day of July, 1875, for the purpose of recovering damages alleged to have been sustained by the plaintiff by reason of the construction by the city of a viaduct or bridge along Halsted and across Kinzie streets, at their intersection, some 220 feet west of plaintiff's premises, fronting on Kinzie street. There was a trial on the merits, before the court and a jury, resulting in a verdict and judgment for the defendant, which judgment, on appeal, was affirmed by the Appellate Court for the First District, and the present appeal is prosecuted to reverse that judgment.

The evidence shows that appellant is the owner of a lot fronting on Kinzie street, 25 feet in width and 100 feet in depth, on the front part of which there is a two-story frame dwelling, and also another on the rear of it, and that he has, by himself and tenants, been in the actual occupancy of the

premises ever since 1872; that the defendant constructed the viaduct in question in 1874, which cut off all communication with Halsted street by way of Kinzie street, except by means of a pair of stairs at the intersection of these streets; that Halsted street is one of the main thoroughfares of Chicago, and on which is operated a line of horse railway, affording communication with all parts of the city; that the rental value of the premises not occupied by appellant was, by reason of the obstruction, reduced from $60 a month to $23, and the property itself, which was worth before the obstruction over $5000, was from the same cause reduced two-thirds in value.

Under this state of facts appellant asked the circuit court to instruct the jury as follows:

"The jury are instructed, that if they believe, from the evidence, that the plaintiff is the owner of the property described in the declaration in this case, and has been such owner since the year 1872; that his property is located, with respect to Kinzie and Halsted streets, as described in the declaration; that the defendant, the city of Chicago, in the year 1874, constructed a viaduct or bridge on said Halsted street, near said Kinzie street, and thereby cut off and prevented access to said Halsted street from the plaintiff's premises over and along said Kinzie street, except by means of a pair of stairs, and that plaintiff's said premises were permanently damaged and depreciated in value by reason of being deprived of such access, then they should find the defendant guilty, and assess the plaintiff's damages at such sum as they shall believe, from the evidence, his said premises have been depreciated by the aforesaid cause."

—Which the court refused to do, but, on the contrary, gave the following instruction for the defendant:

"The jury are instructed, that, it being admitted that the fee simple title to the streets in question was in the city, and

the plaintiff having failed to prove any actionable injury, they should find the defendant not guilty."

And the plaintiff thereupon excepted. The ruling of the court upon these instructions presents the only questions arising upon the record for determination.

It is not claimed there were any omissions in the preparation or presentation of the plaintiff's case, or that the proofs were in any respect defective, if a recovery can be had at all on plaintiff's theory of the law. On the other hand, it is not claimed or pretended that the plaintiff's possession has been disturbed, or that any direct physical injury has been done to his premises by reason of the obstruction in question. The *gravamen* of the plaintiff's complaint is, that the defendant, in cutting off his communication with Halsted street by way of Kinzie street, has deprived him of a public right which he enjoyed in connection with his premises, and thereby inflicted upon him an injury in excess of that shared by him with the public generally, and it is for this excess he seeks to recover, and nothing more. The instruction given for defendant denies the right of recovery for this excess, and in effect holds that where the fee of the streets is in the municipality, as in the present case, there can be no recovery in any case for an obstruction of this character, except where some direct physical injury has been done to the plaintiff's premises.

Whether this instruction announces a correct principle of law, is the vital question in this case, and upon its determination the rights of the parties to the present controversy must depend. It is a well recognized principle, that where a thing not *malum in se* is authorized to be done by a valid act of the legislature, and it is performed with due care and skill, in strict conformity with the provisions of the act, its performance can not, by the common law, be made the ground of an action, however much one may be injured by it. *Penny*

v. *Southeastern Ry. Co.* 7 E. & B. 660; 26 L. I. Q. B. 225; *Hammersmith and City Ry. Co.* v. *Brand*, L. R. 4 H. Lds. 171; *City of Glasgow Union Ry. Co.* v. *Hunter*, L. R. 2 Se. &·D. 78. In all such cases the statute affords a complete indemnity to those acting under its authority, notwithstanding the injury complained of would, in the absence of the statute, be actionable by the common law. *Radcliff* v. *Mayor*, 4 N. Y. 195; *Billinger* v. *New York Central R. R. Co.* 23 id. 42; *Newark Plank Road Co.* v. *Elmer*, 1 Stockt. 754.

In the absence, therefore, of any constitutional provisions on the subject, it would be competent for the legislature to authorize the taking or damaging of private property for public use, and the owner would be without redress, so far as any common law remedy is concerned.

With a view of preventing great hardships and abuses that might arise through inconsiderate· legislation in the application of this acknowledged principle of the common law, the framers of the constitution of 1848 inserted therein this express provision: "Nor shall any man's property be taken or applied to public use without the consent of his representatives in the General Assembly, nor without just compensation being made to him." The substance of this provision is to be found in the constitution of the United States, and in the constitutions of most, if not all, the States of the Union. Just what will amount to a taking of private property, within the meaning of this constitutional inhibition, has often been the subject of judicial inquiry, and it is believed that no general rule has yet been laid down by which the cases generally may be harmonized. The courts of final resort of some of the States hold that the constitutional provision in question extends only to cases of an actual appropriation of private property by the State, and that it has no application where the injury is consequential rather than direct, although it may have the direct effect of substantially depriving the owner of its use. *Wilson* v. *Mayor,*

*etc.* 1 Denio, 555 ; *State* v. *The Inland Lock Navigation Co.* 2 Johns. 283 ; *Boughton* v. *Carter,* 18 *id.* 405 ; *Richardson* v. *Vermont R. R. Co.* 25 Vt. 465 ; *Gould* v. *Hudson River R. R. Co.* 6 N. Y. 522.

But other courts of equal respectability, and as. it is believed with better reason, hold that the change of the grade of a public highway, or the erection of a public improvement of any kind, that causes any direct physical injury to the property of a private person, by overflowing his land and the like, by reason of which he is substantially deprived of its ordinary use and enjoyment, is, within the meaning of the constitution, a taking of his property to the extent of the damages thereby occasioned. *Hooker* v. *New Haven and Northhampton Co.* 14 Conn. 146 ; *Glover* v. *Powell,* 2 Stockt. 211 ; *Haynes* v. *Thomas,* 7 Ind. 38 ; *Pratzman* v. *Indianapolis, etc. R. R. Co.* 9 *id.* 469 ; *Crawford* v. *Delaware,* 7 Ohio, (N. S.) 459 ; *Street Railway* v. *Cumminsville,* 14 *id.* 523 ; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166.

In giving a construction to this provision in the constitution of 1848, the doctrine of the cases last cited has uniformly been maintained by this court through a long line of decisions.

The doctrine was first distinctly announced in *Nevins* v. *The City of Peoria,* 41 Ill. 502. That was an action on the case by Nevins against the city, for so constructing the grade of one of its streets as to flood the plaintiff's premises in time of rains, and also so as to form a stagnant pond in a short distance from them, and it was held the action would lie. Here, although there was no actual appropriation of the plaintiff's premises by the defendant, yet as the grading of the street caused a direct physical injury to the plaintiff's property, it was held to be such an injury as entitled the plaintiff to relief under the constitution. In speaking of the character of the injury, it was there said : "We are unable to see why property of an individual should be sacrificed for the public con-

venience without compensation.   We do not think it sufficient
to call it *damnum absque injuria.   We know our constitution
was designed to prevent these wrongs.*"

In *Gillham* v. *The Madison County R. R. Co.* 49 Ill. 484,
the defendant company, by the erection of an embankment
near the plaintiff's land, had, as in the preceding case, caused
it to be flooded with surface water in time of rains.   The
court below having sustained a demurrer to the declaration
setting up these facts, the case, on appeal, was reversed for
that reason, this court holding that the plaintiff was entitled
to recover.

*City of Aurora* v. *Gillett et al.* 56 Ill. 132, was, in its facts,
substantially the same as the two preceding cases.   There
was a judgment for plaintiff in the court below, which, on
appeal, was affirmed by this court.

*The City of Aurora* v. *Reed et al.* 57 Ill. 29, did not mate-
rially differ in its facts from the last case, and was decided in
the same way.

*City of Jacksonville* v. *Lambert*, 62 Ill. 519, is to the same
effect, without any qualification of the doctrine in the pre-
vious cases.   So, also, of *The City of Dixon* v. *Baker*, 65
Ill. 518.

*The Toledo, Wabash and Western Ry. Co.* v. *Morrison*, 71 Ill.
616, is also a case in which the defendant company, in con-
structing its road, erected an embankment, whereby surface
waters in time of rains were concentrated, and thrown in undue
quantities upon the plaintiff's premises.   While this case was
tried after the present constitution went into effect, yet the
principal facts occurred before its adoption, and it was there-
fore disposed of without reference to it.   It affirmatively
appeared in this case, that the defendant had been guilty of
no negligence in the construction of the embankment, and
that the work was done in strict conformity with its charter.
Under this state of facts the defendant invoked in its defence
the well recognized principle above mentioned, — that an

action will not lie for a thing which is done in strict con-
formity with a valid act of the legislature,—but the defence
did not prevail, and there was accordingly a judgment for the
plaintiff, which, on appeal, was affirmed by this court, on
the sole ground that the case fell within the provision of
the constitution of 1848 which forbade the taking of pri-
vate property without just compensation. This case is
perhaps the most important one bearing upon the subject,
for the reason that it is not only a direct decision on the
question, but it is entirely uncomplicated with any other
question. Now, it is clear, beyond all question, that since
the work was done without negligence on the part of the
company, its charter would, but for the constitutional pro-
vision in question, have been a complete defence to the
action; but inasmuch as the case, according to the previous
decisions of the court, clearly fell within that provision of
the constitution, the charter of the company was held to be
no answer to the action. It is further to be observed, that
all the cases which we have cited subsequent to the *Nevins
case*, refer approvingly to that case.

Whatever, therefore, may be the rule in other States, it
clearly appears from this review of the cases that previous to,
and at the time of the adoption of, the present constitution,
it was the settled doctrine of this court that any actual physi-
cal injury to private property, by reason of the erection, con-
struction or operation of a public improvement in or along a
public street or highway, whereby its appropriate use or
enjoyment was materially interrupted, or its value substan-
tially impaired, was regarded as a taking of private property,
within the meaning of the constitution, to the extent of the
damages thereby occasioned, and actions for such injuries
were uniformly sustained.

This construction making an actual physical invasion of
the property affected, the test in every case, excluded from
the benefits of the constitution many cases of great hard-

ship, for, as in the present case, it often happened that while there was no actual physical injury to the property, yet the approaches to it were so cut off and destroyed as to leave it almost valueless.   Under this condition of affairs the framers of the present constitution, doubtless with a view of giving greater security to private rights by affording relief in such cases of hardship where it had before been denied, declared therein that "private property shall not be taken *or damaged* for public use without just compensation."   The addition of the words "or damaged," can hardly be regarded as accidental, or as having been used without any definite purpose.   On the contrary, we regard them as significant, and expressive of a deliberate purpose to change the organic law of the State. Nor were they used simply to conserve existing rights, as has been suggested by counsel, but on the contrary, in our judgment, they declare a new rule of civil conduct, from which spring new rights which did not exist under the constitution of 1848.   As we have already seen, the provision in that constitution extended to all cases where the injury to property was direct and physical, as well as where there was an actual appropriation or taking.   The rights of the people, therefore, under the old constitution, were conserved just as much in one of these two classes of cases as in the other, and were fully protected in both, and to say that the words "or damaged" were added in the new constitution for the purpose of conserving rights pertaining to either class, is equivalent to saying these words were added to effectuate a purpose that was fully accomplished under the old constitution without them,—or in other words, is equivalent to saying that their insertion in the new constitution was simply superfluous. There seems to be no escaping this conclusion, for the provisions in both constitutions are in effect the same, with the exception of the additional words in question.

The position of appellee that the new constitution was simply intended to conserve existing rights, and that there-

fore there can be no recovery in any case except where there has been an actual appropriation of, or physical injury to, the plaintiff's property, is founded in part upon certain expressions to be found in some of the cases which have arisen since the adoption of the new constitution, which seem to recognize as still existing the old test that the injury must be direct and *physical,* where there has been no actual appropriation or taking of the property. It is hardly necessary to observe that what is said in any case upon a matter not necessarily involved in the decision, is not to be regarded as authoritative or binding. Such expressions can only be regarded as indicating the views of the members of the court, and particularly that of the writer of the opinion, upon a matter which the court is not required to, and consequently can not, judicially determine, and hence, while they are entitled to respectful consideration, they are never accepted as authoritative. An examination of the cases, it is believed, will clearly show that no express decision to that effect has ever been made, and even if such a case could be found, it must have been made without due consideration, and should not be followed, for to recognize such a rule would, in effect, as we have already shown, be to render inoperative a plain provision of the constitution.

*Stone* v. *Fairbury, Pontiac and Northwestern R. R. Co.* 68 Ill. 394, was an action of trespass, charging the defendant with casting smoke and cinders from its engines and locomotives in operating its road, upon the plaintiff's premises, in which there was a judgment for the defendant upon a demurrer to the declaration. This court, in reversing the judgment and holding the declaration disclosed a good cause of action, among other things said: "The railroad company must be held responsible to property owners upon the street for such direct physical damage as shall result from the construction of the road, or the operation of the same after its completion. * * * Under the Massachusetts statute,

which is somewhat analogous to our constitution, the court seem to lay down the rule that the damage, in order to enable a recovery, must be a direct physical injury, which is no doubt the proper rule." It is to be observed of that case the only question involved in it was the sufficiency of the declaration, and that was clearly good, as we have abundantly shown, under the old constitution. Under the facts disclosed by it no new question was raised which called for a construction of the additional words, "or damaged," occurring in the new constitution. Had the facts presented a case like the present, where no direct physical injury is complained of, it would then have been necessary to have passed upon the legal effect of those words, but such not being the case, what was said in that respect was not necessary to a decision of the case, and can not therefore be regarded as authoritative in this.

It is conceded that some little confusion exists with respect to the use of the expression, "physical injury," in connection with the term *property;* but it is believed this arises mainly from the ambiguous character of the latter term, and doubtless all the apparent conflicting expressions to be found in the opinions of this court upon this subject may be harmonized upon the theory that the term property, in that connection, is used in different senses. Property, in its appropriate sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others, and doubtless this is substantially the sense in which it is used in the constitution; yet the term is often used to indicate the *res* or subject of the property, rather than the property itself, and it is evidently used in this sense in some of the cases in connection with the expression physical injury, while at other times it is probably used in *its* more appropriate sense, as above mentioned. The meaning, therefore, of the expression "*physical* injury," when used in connection

with the term property, would in any case necessarily depend upon whether the term. property was used in the one sense or the other. To illustrate: If the lot and buildings of appellant are to be regarded as property, and not merely the subject of property, as strictly speaking they are, then there has clearly been no physical injury to it; but if by property is meant the right of user, enjoyment and disposition of the lot and buildings, then it is evident there has been a direct physical interference with appellant's property, and when considered from this aspect, it may appropriately be said the injury to the property is direct and physical; and when thus viewed, all that was said in the *Stone case, supra,* is readily harmonized with the actual decisions of this court. What is here said is equally applicable to similar expressions to be found in other cases hereafter to be noticed, and we shall not repeat it in our reference to them.

Under the constitution of 1848 it was essential to a right of recovery, as we have already seen, that there should be a direct physical injury to the *corpus* or subject of the property, such as overflowing it, casting sparks or cinders upon it, and the like; but under the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action.

As opposed to this view, appellee cites *Chicago, Burlington and Quincy R. R. Co.* v. *McGinnis,* 79 Ill. 269. The facts of this case arose before the new constitution, and consequently its construction was not involved in it; besides, there is nothing said in it that militates against the view here expressed, but on the contrary, so far as that case has any application to the one before us, sustains it.

The case of *Stetson* v. *The Chicago and Evanston R. R. Co.*
75 Ill. 74, is relied on for the same purpose. The question
presented by that case was, whether where a railroad com-
pany, under authority from a city, has located its track
upon a public street, a bill in equity will lie at the suit of an
owner of lots abutting on the street, to restrain the company
from operating its road until the damages claimed to have been
done to the lots by reason of the construction and operation
of the railway are ascertained and paid, and it was held that
such a bill would not lie, but that the party would be left to
his action at law for whatever actual damages he may have
sustained,—the court having held that where there has been
no actual taking of property, and the company has con-
structed its track under authority from the city, chancery
has no jurisdiction. What was said with respect to the
character of the injury was not at all necessary to a decision
of the case, and must be regarded as mere *obiter*. But even
if this were not so, all that is there said may be harmonized,
in the manner we have stated, with the previous and subse-
quent decisions of this court upon that question.

In this connection *The Chicago, Milwaukee and St. Paul
R. R. Co. et al.* v. *Hall*, 90 Ill. 42, is also cited. That
case went off on a question wholly different from the one
under consideration, and much of what we have said with
respect to the preceding case is equally applicable to that.
It is said in the opinion in that case, in referring to the char-
acter of the injury for which a recovery may be had, "the
injury must be physical." There is no particular objection
to this language, if taken in its more appropriate sense, as
we have already explained. But admitting the language was
used in the sense claimed by appellee, it must be regarded
as having been inconsiderately said, and not warranted by
the previous decisions of this court. It is not reasonable to
suppose that it was intended, by the language there used, to
overrule, without even a reference to them, the cases of *City*

*of Pekin* v. *Winkel,* 77 Ill. 56, *Same* v. *Brereton,* 67 id. 477, *City of Elgin* v. *Eaton,* 83 id. 535, *City of Shawneetown* v. *Mason,* 82 id. 337, and *Stack* v. *City of East St. Louis,* 85 id. 377, all of which expressly hold that there may be a recovery for injuries other than those directly affecting the *corpus* or subject of the property, and in three of the cases the only injury complained of was, in effect, precisely like that complained of in the present case. The conclusion reached in all these cases is distinctly placed upon the ground that the new constitution has enlarged the right of recovery by extending its provisions to a class of cases not provided for under the old constitution, and to now turn round and hold, as we are urged to do, that the old test of direct physical injury to the *corpus* or subject of the property affected must still control, as it did under the old constitution, would place this court in anything but an enviable position, and justly invite adverse criticism from an enlightened bar.

The question then recurs, what additional class of cases did the framers of the new constitution intend to provide for which are not embraced in the old? While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street,—if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery it must

appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of· the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.

The English courts, in construing certain statutes providing compensation for injuries occasioned by public improvements, in which the language is substantially the same as that in our present constitution, after a most thorough consideration of the question, lay down substantially the same rule here announced. *Chamberland* v. *West End of London Railway Co.* 2 Best & Smith, 605; 110 E. C. L. R. 604; id. 617; *Beckitt* v. *Midland Railway Co.* L. R. 1 C. P. 241; on appeal 3 C. P. 82; *McCarthy* v. *Metropolitan Board of Works*, L. R. 7 C. P. 508. These statutes required compensation to be made where property was "injuriously affected," which the English courts construe as synonymous with the word "damaged." *Hall* v. *Mayor of Bristol*, L. R. 2 C. P. 322; *East and West India Docks Co.* v. *Gattke*, 3 McN. & G. 155.

The rule we have adopted was unanimously sustained by the House of Lords in the *McCarthy case, supra*, and is believed to be in consonance with reason, justice, and sound legal principles, and while it has not heretofore been formulated in express terms, as now stated, yet the principles upon which the rule rests are fully recognized in the previous decisions of this court, particularly in *City of Shawneetown* v. *Mason*, 82 Ill. 337, *City of Pekin* v. *Brereton*, 67 id. 477, *Chicago and Pacific R. R. Co.* v. *Francis*, 70 id. 238, *City of*

6—102 ILL.

*Pekin* v. *Winkel,* 77 id. 56, and *City of Elgin* v. *Eaton,* 83 id. 535. In this last case, the *Shawneetown* and *Brereton cases* are approvingly referred to. In the *Shawneetown case* it was said: "The true question is, whether the property was injured by the improvements. If not, then there is no damage, and can be no recovery. If there is, then the recovery must be measured by the extent of the loss," etc. One of the elements of damage distinctly recognized in this case was the physical obstruction of the right and means of access to the plaintiff's premises. And so of the *Brereton case, Winkel case, Eaton case,* and *Stack case.*

In the light of these authorities we are clearly of opinion that the circuit court erred in refusing appellant's instruction, and also in giving appellee's, and for these errors the judgment of that court should have been reversed by the Appellate Court, and for not doing so the judgment of the Appellate Court must be reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause for further proceedings in conformity with the views here expressed.

*Judgment reversed.*

Mr. JUSTICE SCOTT: I dissent from both the reasoning and conclusion adopted in this opinion. My understanding is, this opinion overrules a long line of consistent cases on this subject since the decision in *Moses* v. *Peoria, Freeport and Chicago R. R. Co.* 21 Ill. 516, the doctrine of which has not before been departed from.

CRAIG and SHELDON, JJ., also dissent.

Mr. CHIEF JUSTICE DICKEY:* I concur in the general views expressed in behalf of the court by Mr. Justice MULKEY, and in the judgment based thereupon. Some expressions may need limitations (not expressed) to preclude misapprehension.

---

*At the time this opinion was filed, Mr. Justice DICKEY was Chief Justice.

I wish to say, however, that formerly my view of this subject was, that a purchaser of a lot in a city or village, fronting upon a street, took the land subject to a right, in the nature of an easement, held by the public to use the street, and subject to the right of the public to improve the street in *any manner* deemed wise and proper by the proper public functionaries, and hence when any improvement was so made, it was no damage to the rights of the lot owner, for he had no right to have the street remain in its original condition, and no right to question the mode in which the street should be improved.    Upon examination and careful reflection I have come to the conclusion that this view of the right of the public in the nature of an easement in the street, needs some qualification.    It seems more reasonable, and consonant with the spirit of our present constitution, to say that the owner of such lot holds the same endowed with the benefits arising from being adjacent to the street, subject to such inconvenience as may result from the use of the street as a highway by the public, and subject to the right of the public to improve the same as a highway, in any ordinary and reasonable mode deemed wise and beneficial to the public, by the proper public functionaries.    It is not every change of grade made in a street, which may in effect impair the value of the lot in its vicinity, which is a violation of the right of the proprietor thereof.    Such changes in the street as it may reasonably be supposed might be made for the improvement of the public highway, the purchaser of a lot upon a street must be assumed to have consented to when the purchase was made.    The making of such changes is therefore no invasion of his right in that regard.    But it can not be assumed that the purchaser gave his assent to sudden and extraordinary changes in the grade of a public highway, such as it is unreasonable to suppose a purchaser at the time of the original sale, or when he made improvements, would naturally anticipate might be required for the improvement of

the public highway. To make such changes is an invasion of the right of the lot owner,—is the exercise of a power beyond this right in the nature of an easement spoken of,—and if the value of the property is really and in fact impaired thereby, in such case the injury to the lot owner is, in my judgment, a damage which, under our constitution, must be compensated.

The improvement in the case at bar is, in my judgment, one of those extraordinary changes which can not be lawfully made without just compensation to those who suffer damage by reason of the structure. The right of action does not depend upon the distance between the lot and the improvement. This depends upon the nature and character of the improvement, and upon the question whether the property of the claimant is materially damaged in fact.