# CHARLES HOHMANN
## v.
## THE CITY OF CHICAGO.

*Municipal Corporations—Viaduct—Construction of—Liability for Damages Arising from—Leasehold Interest.*

1.  The authorities of cities are vested with a *quasi* judicial discretion as to the improvement of streets, and courts have no power to order them to make all alike, or to keep all in the same state of repair.

2.  There is no obligation upon the part of a municipality that it will not so alter or improve its public ways and places, or change the location of its public buildings and business, that thereby travel and custom may not be diverted from premises which, by reason of former usage, have long had the benefit of the same.

3.  A real estate owner can recover for obstructions that impede access to his premises, only when the same are of an extraordinary character, and which could not have been naturally and reasonably anticipated as things that would in time be required.

4.  Persons owning property fronting upon or near to a public street hold the same subject to the right of the public to do in respect to the street all such things as are usual and reasonably necessary in respect to such street, and which the property holder may be fairly said to have contemplated when the street was opened or dedicated.

5.  Where a plaintiff has only a leasehold interest, the premises he occupies not being taken, in order to recover, it is necessary for him to show that there has been a direct physical disturbance of some right which he had in connection with his property, and which gave to it an additional value, and that by reason of such disturbance he has sustained a special damage in respect to his property in excess of that sustained by the public generally.

[Opinion filed June 25, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Charles Hohmann, being the lessee from May 1, 1888, to April 30, 1893, of the lower part of the premises known as 68 Western avenue in the city of Chicago, brought an action against the city of Chicago to recover the damage done, as he claimed, to his leasehold interest, by obstructions to his premises, caused by the construction of the viaduct at Kinzie street and the approaches thereto.

Counsel for appellant in the brief by them filed, say: "More broadly stated, Hohmann's contention is that the construction of the viaduct and approaches had the effect of diverting from Western avenue particular classes of travel and traffic, which formerly used it as a thoroughfare, past his place, and from which he derived, in his saloon business, a steady and profitable patronage and custom, and in conse-

Hohmann v. City of Chicago.

quence of such diversion, the eligibility of his premises for his business was greatly impaired and their rental value was seriously reduced, thus entailing upon him both loss of business and of leasehold value." As a criterion upon which to base an estimate of the loss in his business, appellant proposed to show an average of his business for six months prior to the construction of the viaduct, for six months during the course of construction, and for six months after its completion. This contention of plaintiff is thus worded in the abstract: " Mr. King: I want to state our position; to follow up this testimony by showing interruption to the business in consequence of construction of viaduct; to show the average receipts of the business from May, 1888, previous to construction of viaduct, and the average receipts for same time after construction and also during time of construction of viaduct. (The court: I do not think you can do that.) Q. Are you able to give an estimate of the average monthly business you did over there for six months prior to your removal to the corner? (Objection; sustained; exception.)" Plaintiff proposed, as a basis for proof of profits and losses by reason of construction of the viaduct, to show, for a period of six months prior to commencement of viaduct, the average monthly receipts from his business, and compare the same with a corresponding period since the completion of the viaduct, and that part of the six months prior, plaintiff carried on the same business near by on Western avenue, almost opposite his present premises, and what his business in receipts was at that former place for the same time, and that the patronage, custom and good will of the business across the avenue was retained by plaintiff and followed him, and continued in the new premises until the commencement of the viaduct.

Messrs. JOHN LYLE KING and F. W. BENNETT, for appellant.

Mr. BENJAMIN F. RICHOLSON, for appellee.

WATERMAN, J. The plaintiff had only a leasehold interest; the premises he occupied were not taken, and for him to

recover, it was necessary for him to show that there had been a direct physical disturbance of some right which he had in connection with his property, and which gave to it an additional value, and that by reason of such disturbance he had sustained a special damage in respect to his property in excess of that sustained by the public generally. Rigney v. City of Chicago, 102 Ill. 64.

To this he had a right and was permitted to show what the city had done in the way of obstructing access to his property, but not what had been done in the way of merely diverting travel to some other street or in some direction so that it no longer passed by his premises.

If the city had improved a parallel street in a very superior manner, or opened a new, more commodious and nearer route for the accommodation of those who had been accustomed to go by and call in at his saloon, travel by his place would doubtless have been diverted and the plaintiff have in consequence lost custom, but he could not have in such case recovered damages from the city. So too, had the city suffered the street upon which plaintiff's premises are situate to become out of repair, the sidewalks to be uneven and the roadway to be broken and irregular, while adjacent and what might be termed competing streets, were kept smooth and agreeable for travelers, it would quite likely have resulted in a diversion of passage and business to such adjacent streets, but would have given the plaintiff no right of action. The authorities of cities are vested with a *quasi* judicial discretion as to the improvement of streets, and courts have no power to order them to make all alike or to keep all in the same state of repair.

The mere diversion of travel in consequence of the construction of the viaduct, however detrimental to the business of plaintiff, is a thing for which he can not recover. There is no obligation upon the part of a municipality that it will not so alter or improve its public ways and places, or change the location of its public buildings and business that thereby travel and custom may not be diverted from premises which by reason of former usage have long had the benefit of the same.

Nor can the owner of property recover damages for every obstruction that impedes access to his premises. In the nature of things obstruction to some degree results from work done upon the street, in the way of paving, constructing subways, putting down water-pipes, sewers, the erection of buildings, etc.

It is only for obstructions which are extraordinary and which could not have been naturally and reasonably anticipated as things that would in time be required, that the property owner is entitled to damages. All persons owning property fronting upon or near to a public street hold the same subject to the right of the public to do in respect to the street all such things as are usual and reasonably necessary in respect to such street, and which the property holder may be fairly said to have contemplated when the street was opened or dedicated. Damage which results from such usual, reasonable and necessary obstruction, is not such as is contemplated by the Constitution, because it is the result of a burden resting upon all property alike, and a qualification of the rights of the property owner, incident to his ownership. City of Denver v. Bayer, 2 Am. & Eng. Corp. Cases, 465; Lewis on Eminent Domain, Sec. 224.

The evidence offered by the plaintiff was therefore properly excluded. It was no part of the business of the jury to determine how much travel past plaintiff's place had been diverted by the construction of the viaduct; they had to do only with injury to the plaintiff's property which resulted from a direct physical disturbance of some right which he had in connection with it, and the special damage, if any, which he had sustained in respect to his property in excess of that sustained by the public generally. He had not, because no property owner has, a right to a course of action upon the part of the city which should not result in a diversion of travel or custom away from his place of business.

The judgment of the court below is affirmed.

*Judgment affirmed.*