(No. 2526—

EDWARD KLEPPISCH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 14, 1936.*

PERRY HILES, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

By this proceeding claimant seeks to recover damages alleged to have been caused by the State of Illinois to the premises owned by him, because of the construction by respondent of S. B. I. Route No. 157 along the east side of claimant's premises. Claimant's property is a twenty-five (25) acre tract located on the south side of S. B. I. Route No. 11, a short distance west of Collinsville, Illinois. Prior to the construction of Route No. 157 there was a city addition just east of claimant's property known as the Collinsville West End Addition; the west boundary of which, called Grand View Drive, separated said Addition from claimant's property. Route No. 157 was constructed on this roadway, known as Grand View Drive and a by-pass or elevated bridge was placed at the intersection of No. 157 with S. B. I. Route No. 11. The latter road at the point in question runs practically east and west, and claimant's property faces the same. His improvements consist of an eight room modern house, with bath, electric lights, water, gas and furnace; a basement under the entire building; a large barn; chicken house; garage and large hog barn. The house and outbuildings comprise about one and one-half acres, and there are twenty-five (25) acres in the tract. The property abuts Route No. 157 along the east side for a distance of eight hundred seventy-one (871) feet. There is then a jog to the west in claimant's eastern boundary line of twenty-seven (27) feet three (3) inches and his east line

then extends south a further distance of seven hundred twenty-three (723) feet eight (8) inches along Route No. 157, leaving a space of twenty-seven (27) feet between that portion of his property line and the road. Claimant contends that prior to the construction in question he had ready and available access from said premises and each and every part thereof adjoining said highway or street, to and from said highway; that by the construction of the highway and the embankment complained of, the State changed the grade of said highway adjoining said premises; that the embankment so constructed extends from the north line of the premises southerly along the east line for a distance of three hundred twenty-seven (327) feet; that such embankment consists of a concrete wall from the level of the ground up to a height of eight feet and of an earthen embankment from the top of such wall an additional seven feet to the concrete slab, making an embankment fifteen feet in height at the northeast corner of claimant's premises and with a gradual slope to grade line at the southern end; that claimant's premises were thereby closed off from access to the street known as Grand View Drive, and separated from the property that lies to the east thereof known as Collinsville West End Addition; that back of the barns and other buildings there was available a tract fronting upon said Grand View Drive sufficient to make about seven, 50-foot, lots facing on said roadway or street and that access to all of said premises from the east was cut off by said embankment. Claimant further complains that the drainage of said premises had been interfered with not only by stopping the drainage which flowed eastward from said premises and along the roadway, but that much additional surface water is thrown on said premises from said embankment.

Damages are further sought because of depreciation in the value of the premises on account of the interference with the scenic view, dust from the highway and the cutting off of air and breeze from the dwelling house by the high embankment. Damages are asked in the sum of Nine Thousand Six Hundred Dollars ($9,600.00).

The proof shows that prior to the construction of the embankment in question, claimant had a beautiful home site, from which one could see far up the roadway on Route No. 11 to the east, with an attractive view from that side of the house toward the Sub-division mentioned; that now the em-

bankment is twenty (20) feet from the house line and shuts out the entire view from both lower and upper windows, and the exhibits and testimony in evidence establish that access to the property from the east and the frontage of said premises on the east side thereof is entirely destroyed.

Respondent's testimony discloses that a temporary grade crossing for Route No. 157 was built across Route No. 11 in 1931, and that the present elevated approach and embankment were constructed in the spring of 1934. A number of culverts have been constructed; one about one hundred ten (110) feet south of Route No. 11; another is about seven hundred (700) feet south of Route No. 11; the water from it goes down across the Kleppisch land. The water that falls on Route No. 157 flows in a southerly direction to a point about three hundred fifty (350) feet south of Route No. 11 and leaves the pavement and flows back in a northerly direction to a 12-inch tile that is along the westerly edge of the retaining wall. This tile connects with the culvert along the southerly side of Route No. 11. This drainage is intended to take care of the water that drains from the pavement for a distance of approximately four hundred fifty (450) feet south of Route No. 11; from that point south the water that falls on the westerly half of the slab drains directly to the Kleppisch land. There is no ditch along the westerly side of the right-of-way anywhere along the Kleppisch land; the retaining wall extends upward about one foot above the point where the earth fill begins, and the evidence is uncertain as to whether the dirt that washes down from the fill would wash over the top of the fill onto the Kleppisch land or not; but the proof seems to indicate that continued attention would have to be given by the highway maintenance crew to prevent such wash.

Evidence has been introduced from a number of witnesses as to the value of the premises before and after the construction of Route No. 157. The Kleppisch land had never been subdivided and from the evidence it appears that the best use for which the premises are adapted at this time is that for which they are in fact being used, i. e. residential and truck gardening purposes.

It has been held by this court that in the building and maintenance of highways and hard surface roads, the State is exercising a governmental function and therein acts in its

sovereign capacity and therefore free from liability for injuries resulting.

Section 13 of Article 2 of the Constitution however provides as follows:

"Private property shall not be taken or damaged for public use, without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law."

As previously held by this court, we regard this provision of the Constitution as being fundamental. Under the legislative act creating this court and under the foregoing provision of the Constitution, this court has taken the position that it had jurisdiction to fairly determine what damage, if any, claimant has in connection with a complaint of this character. Claimant does not contend that the State has taken any of his property, but he asks for consequential damage on account of the construction of the embankment complained of.

Injury or damage to property not taken, in the construction of an improvement, for which compensation is to be made, must be a direct physical injury or disturbance of a right which the owner enjoys in connection with the property or which causes damage in excess of that sustained by the public in general. If the convenience of the road to the balance of a tract will outweigh the inconvenience suffered by a certain selected portion, there can be no award. In the present case it does not appear that the construction of Route No. 157 is of any material benefit to that portion of the Kleppisch land lying west of his dwelling, for such land already had a frontage on S. B. I. Route No. 11. That portion of his land which lies south of the point where the embankment begins is quite apparently benefited by having a hard road extending across the front thereof. That portion which now faces the embankment in question has quite apparently lost the freedom of access on a direct frontage basis.

It has been repeatedly held by our Supreme Court that inconvenience or annoyance necessarily occasioned to the owners of abutting property during the progress of the work by the construction of an improvement, does not constitute damage to the property not taken, within the meaning of the Constitution, but is merely a burden incidentally imposed upon private property adjacent to a public work, without which, such improvements can seldom be made and which

therefore give no cause of action. *Chicago Flour Co.* vs. *City of Chicago*, 243, Ill. 218; *Osgood* vs. *City of Chicago*, 154 Ill. 194; *Grassle* vs. *State*, C. of C. No. 2339.

Where a property owner's right of access to his property has been destroyed or interfered with, he is entitled to compensation for the damages thereby sustained. *Rigney* vs. *City of Chicago*, 102 Ill. 64; *Edward Nance, Admr., etc.* vs. *State, C. of C.*, No. 2012.

The proper measure of damages where property is not taken but is damaged for public use, is the difference between the fair cash market value of the property prior to the construction of the improvement and unaffected by it, and its fair cash market value after the construction of the improvement and as thereby affected, taking into account that benefits to lands not taken may be set off against damages to land not taken and that such damages must be direct and proximate and not merely speculative or remotely contingent. *Dept. of Public Works* vs. *Caldwell*, 301, Ill. 342; *Dept. of Public Works* vs. *McBride*, 338 Ill. 347.

The evidence herein concerning values, as might be expected, is conflicting. One witness, Arthur Cohn, testified that in his opinion the value of the premises prior to the construction was Eighteen Thousand Five Hundred Dollars ($18,500.00), being Ten Thousand Dollars ($10,000.00) for the one and one-half acres and Eight Thousand Dollars ($8,000.00) for the balance; that the total damage was Nine Thousand Dolars ($9,000.00). This same witness testified to a sale of a tract of nine (9) acres near the Kleppisch land that was improved with three or four cottages and a four room house and restaurant for Four Thousand Two Hundred Dollars ($4,200.00) in 1931. Some of the witnesses testified that in their opinion the ground west of the house, equivalent to twelve (12) lots of fifty (50) feet each, fronting on Route No. 11, were damaged to the extent of One Hundred Fifty Dollars ($150.00) each, and that the one and one-half or two acres of grounds on which the buildings stood was damaged Four Thousand Dollars ($4,000.00) and that the balance of the land was not affected by the construction. Another witness, Charles Gronau, testifying for complainant, stated that in his opinion there was the equivalent of three (3) lots of fifty (50) feet each south of the building on Route No. 157 which were dam-

aged to the amount of One Hundred Dollars ($100.00) per lot and that the one and one-half acres on which the building stood had suffered a depreciation of Six Thousand Five Hundred Dollars ($6,500.00). Another witness, N. C. McLean, testified that in his opinion the entire premises had been increased in value by reason of the construction.

Considering the record as a whole, the court is of the opinion that there has been a direct damage because of interference of ingress and egress to said premises which affects a limited portion of said premises and the damages are fixed at a sum of Three Thousand Dollars ($3,000.00).

An award is hereby entered in favor of claimant, Edward Kleppisch, of the sum of Three Thousand Dollars ($3,000.00.)