THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellant, v. MANUEL RAIMUNDO GARCÍA CHÁVEZ DEL VALLE ET UX., Defendants and Appellees.

No. 9314. Argued May 15, 1946.—Decided July 24, 1946.

E. Campos del Toro, Attorney General (Luis Negrón Fernández, Acting Attorney General, on the brief), Elmer Toro Luchetti, Attorney of the Department of Justice, and Jorge V. Toledo and Clemente Pérez Martínez, Attorneys of the Department of Labor, for appellant. F. M. Susoni, Jr., for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The Commissioner of the Interior, in representation of the People of Puerto Rico, instituted two condemnation proceedings in the lower court against Manuel Raimundo García Chávez and his wife Ramona González, in order to take a certain land from defendants for the purpose of widening and improving Highway No. 2 in the place known as Guajataca between Quebradillas and Isabela. The proceeding filed under No. 5520 was presented in September, 1943, and No. R–981, in October, 1944. The latter refers to a parcel of land of 0.3053 acres (cuerdas) equivalent to 1,200.04 square meters and the other to a parcel of 1.819 acres (cuerdas).

The petitioner, on the assumption that the land in question has a value of $200 per acre (cuerda), deposited in the office of the clerk of the court the amounts of $61.06 and $363.80, respectively, whereupon at its behest an order was issued vesting title over said parcels in the People of Puerto Rico: in case No. 5520 under date of September 13, 1943, and in case No. R–981 under date of August 15, 1944. Defendants, upon answering the condemnation petitions, did not challenge its right to take the property but alleged that the fair value of the land in case No. R–981 was $500 and of the property in case No. 5520, $1,819. They further alleged that on the property of 1.819 acres there is a concrete house which together with the lot is worth $10,000, which was rendered uninhabitable because of the dust thrown upon it from the viaduct, the "indiscreet looks" of persons who travel along the highway and could see what was going on inside the house, and because of the fact that the house is now about seven meters lower than the highway, the latter having been raised at the place where the viaduct was constructed. They

sought to recover $10,000 for these damages. They also claimed an award of $500 for damages to a parcel of land of 2,000 meters situated between the new and the old road, plus costs.

Both cases were consolidated for trial and judgments were rendered on August 22, 1945. In case No. 5520 the judgment granted the defendants, besides the amount deposited by the petitioner, the following: (a) $1,200 as the fair value of hte lot of 1.819 acres; (b) $200 as damages to the parcel of land between the old and the new roads;[1] and (c) for depreciation of the concrete house, $2,000, with interest at 6 per cent on all of said amounts from the date of the judgment. Petitioner was also adjudged to pay costs and $300 as attorney's fees. In case No. R–981 in payment of the 1,200.04 meters it granted $150 in addition to the $61.06 deposited by the petitioner, with legal interest from the filing of the judgment plus costs and $50 for attorney's fees. From these judgments petitioner has taken the present appeals which have been consolidated by this court.

In its first assignment of error appellant urges that the court erred in ruling at the beginning of the trial that, since petitioner had the burden of the proof, it had to introduce its evidence before defendants'.

It is a well-settled rule in most jurisdictions that when in a condemnation case the only question in issue is the amount of the compensation to be paid to the owner, the latter, although he nominally appears as the defendant, holds in fact the position of a plaintiff, and as such, must prove his right to collect an amount greater than the one deposited by the petitioner as the value of the property and of the damages, if any. Consequently, it is incumbent on the owner to present his evidence first. The rationale of this rule is that, as to the amount which petitioner has deposited as just

---

[1] Subsequently the judge, on stipulation of the parties, eliminated this item of damages because it involved the land taken in case No. R-981.

compensation, there is no controversy, and the only question is whether the compensation is more than the amount deposited. Therefore, the issue consists of the owner's contention to the effect that the compensation should be greater than the amount deposited and the denial of this assertion by the petitioner. 2 *Lewis Eminent Domain,* (3d ed. 1909) § 645; *U. S. Ex Rel. T. V. A.* v. *Powelson,* 319 U. S. 266, 273 (1943); *Minneapolis-St. Paul Sanitary Dist.* v. *Fitzpatrick,* 277 N.W. 394, 124 A.L.R. 897 (Minn. 1937). However, it has not been shown by the appellant or disclosed by the record, that this error caused any substantial prejudice, and consequently it does not call for a reversal. *Bank of Edenton* v. *United States,* 152 F. (2d) 251 (C.C.A. 4th, 1945).

 Appellant complains that he was adjudged to pay for the two lots taken, the amounts of $150 and $1,200, respectively, in addition to the amount already deposited in both cases. Petitioner's witnesses, Enrique González and Ginés Flaqué Garcés, an engineer, appraised both properties in the same amount that petitioner deposited at the disposal of the owner when the former sought the order of delivery. They based their appraisal on two similar sales of land adjacent to the one condemned an for which the People of Puerto Rico paid, shortly before the institutions of these proceedings, $80 and $200 per acre, respectively.

We do not need to decide in this case whether sales of properties similar to the one sought to be condemned made to the government or to an agency authorized to take, is competent evidence for the purpose of settling a conflict as to the value of the property. Assuming, without deciding, that the evidence is admissible, the great discrepancy between the value given to the land to wit:—$80 per acre in one case and $200 per acre in another case—precludes us from concluding that the court erred in failing to give considerable probative force to this evidence, no explanation having been given for such discrepancy between both sales.

Defendants' witnesses, who were familiar with the value of the land, appraised the property at the rate of 25¢ per square meter. They based their appraisal in that, according to their testimony, the place was one of the most beautiful seascapes in Puerto Rico which because of its topography had probabilities for development in a near future. The trial judge himself stated that the place was beautiful and should be prepared as a tourist attraction, but the judge did not believe that the property was as valuable as defendants' experts considered it and, as we have seen, awarded for the lot of 1200.04 square meters the amount of $150 and for the one of 1.819 acres, $1,200 in addition to the amounts deposited in each case by the petitioner.

[5] Explaining what should be understood by just compensation in condemnation cases, the Supreme Court of the United States has said:

"Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." *Olson* v. *United States,* 292 U. S. 246, 255 (1934); *United States* v. *Causby et al.,* decided by the Supreme Court of the United States on May 27, 1946; *U. S. Ex Rel T. V. A.* v. *Powelson, supra.*

Experience shows that among the most competent witnesses there is frequently a wide diversity of opinion as to the value of the same property. As stated in *Welch* v. *Tennessee Valley Authority,* 108 F. (2d) 95 (C.C.A. 6th, 1939), there is no single measure of value which may be applied rigidly and uniformly in the determination of the market value of lands and each case must be considered in the light of its own facts. For this reason, considering the topography

484

of the land and the chances of developing it in the near future, we are not convinced that the trial judge was mistaken in awarding said compensation.

 Appellant complains of the award of $2,000 for depreciation of defendants' dwelling house. This assignment of error is intimately related to another one wherein it is alleged that the lower court rendered judgment without taking a view of the premises which was sought by the petitioner at the beginning of the trial and which the court offered to take before the rendition of the judgment.

The evidence for the defendants tended to show that the house faced, and was at a grade with, the old highway at a distance of about 100 meters; that when the viaduct was constructed, the house, which is 4 meters high, was brought at a distance of 33 meters from the viaduct and about 7 meters lower than its grade; that direct access to the new highway was impeded and by reason thereof it suffered depreciation which according to the witnesses amounts to the value of the house itself. They further testified that the difference in grade between the viaduct and the layout of the house had prejudiced the latter because persons who traveled along the viaduct could see right into the house and because the dust thrown off by the passing vehicles invaded it constantly and actually rendered it unfit for residence. The petitioner had presented evidence to the effect that the construction of the viaduct had improved defendants' land 20 per cent.

The right to the compensation for damages which defendants allege to have sustained in connection with the house stems from the provision of § 2 of the Organic Act that provides:

"Private property shall not be taken *or damaged* for public use except upon payment of just compensation ascertained in the manner provided by law." (Italics ours.)

The words "or damaged" do no exist in the Federal Constitution under which damages to the property are not com-

pensable unless they are of such a character as to amount to a permanent taking of the property. *United States* v. *Causby et al., supra; Richards* v. *Washington Terminal Co.,* 233 U. S. 546, 554 (1914).

When the State of Illinois, in view of the damages caused to the citizens of Chicago by reason of the frequent expropriations required by the city growth, revised its constitution in 1870, it added to the corresponding provision the words "or damaged" and thereafter other States followed the example by amending their constitutions to the same effect. 2 Nichols, The Law of Eminent Domain (2 ed., 1917), § 311; 1 Lewis, Eminent Domain (3d. ed. 1909), § 346.

The object of this addition to the constitution was no other than to grant to the owner of the property taken, a right of which he had been denied under the previous constitution, that is, the right to obtain compensation for damages sustained by reason of the taking of his property. *Rigney* v. *City of Chicago,* 102 Ill. 64; *Chicago* v. *Taylor,* 125 U.S. 161; 1 Lewis, Eminent Domain (2d ed. 1909), § 359.

The Supreme Court of Illinois, upon construing the true scope of the words "or damaged" added to its constitution in 1870, expressed itself thus:

"In this respect our constitution affords redress in all cases where there is occasioned by a public improvement some direct disturbance of a right which is enjoyed by the owner in connection with his property and which gives to the property an additional value, and by reason of such disturbance he has sustained special damage with reference to his property in excess of that sustained by the public generally. (Citing authorities.) The disturbance need not be a physical disturbance of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object. (Citing authorities.)" *Kane* v. *City of Chicago,* 64 N.E. (2d) 506 (Ill. 1945.)

As to the interpretation given to the State Constitution by the Supreme Court of Illinois, it has been stated that the definition of damage in the constitutional sense has stood the test of time and sooner or later has been adopted in almost

all of the States which require compensation when property is damaged. 2 Nichols, The Law of Eminent Domain (2d ed. 1917), § 312, p. 851.

The nature of the damages claimed by the defendants in relation to the house, called for a view of the premises. In this view it would have been easy for the judge to determine whether in fact the dust of the road was thrown upon the house in such an extraordinary quantity in excess of what is normally thrown on houses abutting streets and pathways, that the value of the property was actually reduced. Likewise it would have been easy to determine whether, as urged by the defendants, the house was deprived of the direct access to the highway and whether the difference in grade between the house and highway had in fact and to what extent depreciated the property; and considering the prejudices as a whole and in connection with the rest of the evidence, to determine the damage sustained which should be the difference between the market value of the house before and after the construction of the viaduct. We must add that the fact that other properties of the defendants should have gained 20 per cent in value by reason of the public improvement carried out by the petitioner, is not a circumstance which should be considered for the purpose of determining the damage sustained, unless it is shown that the property has obtained a special benefit different from the general benefit obtained by the community. Annotation in 145 A.L.R. 1, where cases dealing with this matter are examined.

It seems advisable to copy from 2 Nichols, The Law of Eminent Domain (2d ed. 1917), § 321:

"*Measure of Damages for Change of Grade.*—The measure of damages in the case of the change of grade of a public way is the same as in other cases of taking or injury for the public use, namely, the decrease in market value, so far as it is due to the modification of the relation of the property in question to the public way. Everything resulting from such modification which affects the market value of the premises is therefore to be taken into consider-

ation. The creation of noise and dust, the invasion of privacy, the deprivation of light and means of access . . . and like matters are to be included, not by being added together item by item, but to the extent that, taken as a whole, they detract from the market value of the property.''

We agree with the court *a quo* that a view of the premises rests in the sound discretion of the trial court; but when a court, as in this case, states at the beginning of the trial that a view shall be taken and the parties have relied on it as a means to illustrate their evidence and to destroy contradictory evidence, to dispense with the view under such circumstances constitutes prejudicial error.

Lastly, appellant complains of the imposition of costs and attorney's fees. The right to a just compensation warranted by § 2 of our Organic Act, does not include the award of costs, disbursements, and attorney's fees. It has been so held in the federal jurisdiction upon construing the Fifth Amendment. *Dohany* v. *Rogers,* 281 U. S. 362 (1930); *U. S.* v. *251.81 Acres of Land in Meade County, Ky.,* 50 F. Supp. 81 (W.D. Ky., 1943); *In re Newark Shoe Stores, Inc., et al,* 2 F. Supp. 384 (M.Md. 1933). And since we have no local statute authorizing the courts to impose costs and attorney's fees on The People of Puerto Rico, the lower court erred in making the award.

For the reasons stated the judgment appealed from must be modified by reversing the imposition of costs and attorney's fees, and by setting aside the compensation granted for damage to the house, and the case is remanded to the lower court to have a view of the premises giving the parties an opportunity to be present, making the corresponding records of the view and thereafter granting the proper compensation for the depreciation, if any, of defendants' dwelling house. As thus modified, the judgment is affirmed.