## THE CITY OF SHAWNEETOWN

### *v.*

## HEZEKIAH G. MASON *et al.*

1. EXPERTS—*not required to prove fact of sickness.* Whether a person is sick, is a fact requiring no special skill or science to understand, and it may be proved by anybody who knows the fact, whether he is a physician or not, though it may be otherwise as to proving the character of the sickness.

2. PRACTICE—*filling panel when juror discharged.* Where a juror is taken sick after a trial begins, it is proper for the court to discharge him and call another juror in his place, and order the trial to proceed *de novo.*

3. CITIES—*power to change grade of streets.* A city may lower or elevate the grade of its streets, when done in good faith, with a view to fit them for use as streets, and can not be held responsible for errors of judgment in that respect, or made liable for the inconvenience and expense of adjusting the adjacent property to the grade of the street as changed.

4. But the same law that protects the citizen, in the enjoyment of his private property, against invasion by individuals, will protect him against similar aggressions on the part of municipal corporations; and whilst a city may elevate or depress the grade of its streets as it thinks proper, yet, if, in doing so, it turns a stream of mud and water upon the grounds and into the cellar of one of its citizens, or creates in his neighborhood a stagnant pond, that brings disease upon his household, it will be liable to him to the extent to which he is deprived of the legitimate use of his property, or its value is impaired by thus turning the water thereon, or by creating the pond of stagnant water.

5. SAME—*liable for changing grade of street for other purposes than to improve it as a street.* Whilst a city is not liable to owners of adjacent property for changing the grade of a street, if done for the purpose of improving the street, yet, if the street is appropriated to another use than that contemplated when it was laid out, as, for a levee to prevent a river from overflowing the town, and the grade is raised for such purpose only, then, under the constitution of 1870, the owners of property damaged thereby are entitled to just compensation.

6. DAMAGES—*special benefits to part of property may be considered in determining whether the whole has been damaged.* In estimating the damage done to property by the appropriation of a public street adjacent thereto to public use other than a street, where no part of the private property is taken, the effect on the whole property should be considered, and not merely a part of it. If one part of the same property is damaged, and another part specially benefited, so that the value of the whole is not diminished, then

22—82D ILL.

there is no damage done; but any general benefit, common to all other property affected by the work, should not be considered in determining whether the property is benefited as much as injured.

7. SAME—*party enjoining can not recover damages, because the thing prevented by injunction is not done.* It is the duty of a city, in building an embankment in its street, to make suitable drains so as to prevent water from being thrown on to the property of its citizens; but if it is prevented from doing so by an injunction, at the suit of a citizen, such citizen can not recover for any injury occasioned by the want of drains which he has himself, by injunction, prevented the city from making.

APPEAL from the Circuit Court of Gallatin county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Mr. W. L. HALLEY, and Mr. R. W. TOWNSHEND, for the appellant.

Mr. F. M. YOUNGBLOOD, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The material allegations in the first count of the declaration, and which present with sufficient fullness the character of the action, are, that plaintiffs "are the owners of in-lot No. 1139, in the city of Shawneetown, situated and fronting on Front street in said city; that it was the duty of the city to keep said street in repair and free from obstructions in front of said lot, so that plaintiffs might have a convenient passage way in and out of said premises; that the city wrongfully and unlawfully erected an embankment of earth of great heighth, to-wit: ten feet, and of great width, to-wit: sixty-two feet at the base and fourteen feet on top, on and along said Front street in front and adjoining the premises of plaintiffs, and thereby obstructed and prevented the passage way into and out of said premises, and rendered the lower story of the dwelling unfit for use, shut out the light, threw water into the cellar, etc., and wholly obstructed the river from the same."

The defendant pleaded two pleas—not guilty, and a license —upon both of which, issues were joined.

The jury returned a verdict in favor of the plaintiffs, assess-

ing their damages at $1300, upon which, after overruling a motion for a new trial, the court gave judgment.

The bill of exceptions recites that, after the jury were impaneled and the evidence of four witnesses had been heard, the court, being satisfied by the evidence of a witness, who was not a physician, that one of the jurors was sick, and unable further to attend as a juror in the trial of the case, ordered him discharged, and a. new juror summoned in his place, and that the trial begin *de novo.*

The counsel for the defendant moved that the remaining eleven jurors be also discharged, but the court overruled the motion, to all of which proper exception was taken, and this ruling is questioned by the first error assigned.

It is insisted that the court was not authorized to discharge the juror upon the evidence of a witness who was not a physician, and, also, that, when one juror was discharged, the whole panel should have been likewise discharged. This is untenable. Whether a person is sick or not, is a fact requiring no special skill or science to understand—although what is the character of the sickness may be otherwise—and it may be proven by anybody that knows the fact. *Chicago, Burlington and Quincy Railroad Co.* v. *George.* 19 Ill. 510. And the statute authorized the court, when the juror was discharged on account of sickness, to fill up the panel, as was done. Gross' Stat. of 1869, p. 389, sec. 12; R. L. 1874, p. 633, sec. 13.

The injuries complained of result from the construction by the defendant of a levee along Front street for the purpose of protecting the city against the inundation or overflow of the Ohio river. The levee is authorized by the city charter, and its construction was prosecuted by the authority and under the direction of the city. No portion of the plaintiffs' property is taken—the levee occupying the street alone—and, with the exception of water claimed to be thrown, by reason of the embankment, into the plaintiffs' cellar, the injuries complained of are incidental, rather than direct.

The counsel for the defendant claim that the embankment was the mere raising of the grade of the street, and that being

done by the city, in the exercise of an unquestioned power, adjacent property owners have no cause to complain for any injury they may have sustained in consequence.

That a city may lower or elevate the grades of its streets at its pleasure, when it is done in good faith, with a view to fit them for use as streets to meet the public wants, and can not be held responsible for errors of judgment in that respect, or made liable for the inconvenience and expenses of adjusting the adjacent property to the grade of the street as improved, was held in *Nevins* v. *Peoria*, 41 Ill. 502; and this has been followed in the cases since decided in which that question was material. The presumption is, that those who purchase lots upon streets calculate the chances of such elevating or lowering of the grade of the streets, as the increase of population of the city may require, in order to make the passage to and from the several parts of it safe and convenient, and, as their purchases are always voluntary, they may indemnify themselves in the price of the lots which they buy, or take the chance of future improvements, as they shall see fit. *Callendar* v. *Marsh*, 1 Pickering, 418.

But in *Nevins* v. *Peoria, supra*, it was said: "The same law that protects my right of private property against invasion by private individuals, must protect it from similar aggressions on the part of municipal corporations. A city may elevate or depress its streets as it thinks proper, but if, in doing so, it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond, that brings disease upon his household, upon what ground of reason can it be insisted that the city should be excused from paying for the injuries it has directly wrought?" And it was held that, to the extent to which the owner is deprived of the legitimate use of his property, or its value is impaired, by the act of the city, he may recover. This was followed in *The City of Aurora* v. *Gillett et al.* 56 Ill. 132, where the basement of the plaintiffs' house was flooded by reason of the defective sewerage of the city; in *City of Aurora* v. *Reed*, 57 Ill. 29, where, through the insufficient drainage

provided by the city, plaintiff's property was flooded by surface water; in *City of Pekin* v. *Brereton*, 67 Ill. 477, where the injury complained of was the making of deep excavations in the street and sidewalk adjoining plaintiff's lots, so that he was obstructed in his access to them; in *City of Pekin* v. *Winkel*, 77 Ill. 56, where, by the embankment of a railroad, access to the plaintiff's lots was cut off, and in *Bloomington* v. *Brokaw*, 77 Ill. 194, where the complaint was, that the city was so constructing the street as to flow the water from the street upon the plaintiff's property.

There can, therefore, in no view, be any question but that the plaintiffs are entitled to recover for any permanent injury, caused by the erection of the embankment, to their property, by reason of its throwing the water into the cellar, rendering the house damp and unhealthy, or cutting off access to the property, which may be sustained by the proof.

But we are of opinion the erection of this embankment is not to be strictly regarded as the mere elevation of the grade of the street. It is true, it is still used as a street, but the elevation is not made with a view of improving the street, but as a levee, for the protection of the city against inundation from the Ohio river.

When the street was laid out, there is nothing to show that this was one of the anticipated uses to which it was to be devoted, and it can not, therefore, be assumed that, when lot owners purchased, they purchased with the view that this levee might be constructed where it is. It is an appropriation of the street to a new use, we concede, legitimate enough in itself, but still a use not implied from the laying out of the street, and it can not be intended lot owners have, by anticipation, compensated themselves against loss resulting by reason of its erection, as in the case of the change of grades in streets properly.

This appropriation of the street occurred since the adoption of the present constitution, and, therefore, if the plaintiffs' property has been "damaged" by the erection of the embank-

ment, they are entitled to just compensation. Const. 1870, Art. 2, § 13.

There is some difficulty in determining with precision, and it is probably impossible to lay down a rule by which to ascertain, in all cases, when property is to be considered as damaged, within the meaning of this provision of the constitution.

In *Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 68 Ill. 394, a majority of the court held the injury for which compensation is to be made, in such cases, must be a direct physical injury.

In *Chicago and Pacific Railroad Co.* v. *Francis,* 70 Ill. 238, it was held, where the property is not taken, the damages for which there may be a recovery, must be real, and not speculative. It was said, after discussing the question at some length, "We must, therefore, hold that the damage contemplated by the constitution must be an actual diminution of the present value or price, caused by constructing the road, or a physical injury to the property, that renders it less valuable in the market, if offered for sale."

In *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 324, which was a condemnation for railroad purposes, it was held, the true measure of compensation for the land damaged but not taken, is the difference between what the whole property would have sold for, unaffected by the railroad, and what it would sell for as affected by it, if it would sell for less. The damages must be for an actual diminution of the market value of the land, and not speculative.

The last two cases proceed upon the same principle, substantially, that has been applied by the English courts in construing the "Lands Clauses and Railways Clauses Consolidation Acts," providing for the payment of damages in case property is "injuriously affected by the execution of the works."

It is said, in Lloyd's "Law of Compensation," based on these statutes, "Land owners are generally entitled to compensation in respect of their property being injuriously affected, when it is depreciated in value by an act of the railway-com-

pany, which, if done by a private individual, would support an action." P. 85.

Where property is so circumstanced that it has no certain market value, so as to apply the rule recognized in the cases cited, the proof, to authorize a recovery, should show such an actual injury as in some substantial way affects the value of the property or its use; and this is in accordance with the spirit of what was held in *Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co. supra.* This may, however, be, as was held in the cases referred to, relating to streets, by cutting off or obstructing access to the property; by causing rooms to be filled with smoke or unhealthy or offensive vapors; by rendering the walls of buildings damp and unhealthy; by darkening windows; or, in short, by any of the numberless ways by which the value of property may be materially depreciated, and its usefulness impaired—the test being that the injury must rest upon some substantial cause actually impairing the value of the property or its usefulness, and not be the result of taste or fancy, merely because of the proximity of the public improvement to the property assumed to be affected by it. It may be that, to some persons, and for some purposes, proximity alone to a public improvement will render property less desirable than it would be under other circumstances. This may be so in regard to private, quite as notably as to public improvements, but so long as the improvement is lawful, and does no actual injury, such incidental damage has never formed the basis of recovery. Property owners are, from the very necessity of things, subject to greater or less influence from surrounding improvements, and, in general, are probably as much benefited as injured thereby—but whether benefited or injured, such influence has never, of itself alone, been regarded as sufficiently definite and tangible to constitute a legal right; and we can not suppose it is intended by our constitution that it was designed it should be made the basis for the payment of damages in the case of public improvements.

A material question in the present case is, whether, in de-- termining how much, if any, damage is done to the plaintiffs' property, the evidence shall .be confined· to a particular part of the property claimed by the plaintiffs to be damaged, or shall extend to the whole property, and the question determined by reference to the effect the building of the embankment has upon the property as a whole.

The court below ruled, in the admission of evidence, and instructed the jury, virtually, that the inquiry was limited to the part of the property claimed to be damaged, and that proof of special benefit to any portion of the property was not to be considered.

This was error. Proof of general benefits resulting from the improvement, to this property, in common with other property in the city, was inadmissible, but whether this particular property was damaged, within the meaning of the constitution, depended upon whether it had received such material injury as rendered it less valuable to the owners, or less useful, as a whole, than it would have been but for the embankment having been constructed as it is.

We said, in *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co. supra,* in discussing this question as there presented, "It was not the damages to a strip of land lying within a limited number of feet of the road bed, that the jury were required to assess, but the damages, if any, to the *entire* tract, by reason of the construction and operation of appellee's road. It is inadmissible to treat that portion of the property injured as a distinct and separate tract from that portion benefited. If the inconvenience of the road to a certain selected part of the tract will be outweighed by the additional convenience of the road to the residue of the tract, the tract will not be damaged by the inconvenience of the road. A partial effect only is not to be considered, but the whole effect; and the effect, not upon any selected part of the tract, but upon the whole tract. This is not deducting benefits or advantages from damages, but it is ascertaining whether there be damages

or not." The ruling in *Chicago and Pacific Railroad Co.* v. *Francis, supra,* was the same.

There was evidence tending to show that the water thrown into plaintiffs' cellar was thrown there by reason of the defendant having been enjoined from prosecuting its work by the plaintiffs whilst it was in an unfinished condition. If this be true, it needs no argument to show that it can not be an element of recovery in an action at law. Defendant owes the duty to make sufficient drains or sewers by the side of the levee to carry off all water flowing from the levee, so as to keep it away from the adjacent property, but it might be that these could not be completed before the completion of the levee, and if their completion was prevented by the act of the plaintiffs, the consequent damages result from the plaintiffs' own wrong.

We may dismiss the cross-errors with but a few remarks.

This is an action on the case for a *tort,* and is, in no sense, a suit under the act relative to "eminent domain," or to recover the amount of a judgment obtained in a proceeding under that act. The proceedings in the county court for condemnation were, therefore, totally irrelevant, and properly excluded by the court.

Although the property of the streets was, by the general government, donated for *street* purposes, we are of opinion there is nothing in the act of Congress making the donation inconsistent with the exercise of the power by the General Assembly to authorize the use of the land for the additional public purpose of a levee. The streets are not destroyed, nor is their use impaired by the levee.

For the errors indicated, the judgment is reversed and the cause remanded.

*Judgment reversed.*