# CHARLESTON.

WILEY *et al v.* HATCHER.

Submitted March 22, 1910. Decided December 12, 1911.

1. BOUNDARIES—*Description—Relative Importance of Conflicting Elements.*

   In locating the boundaries of land, ordinarily the course of a line must yield to a call for a natural monument. (p. 93).

2. SAME.

   A call in an ancient deed for "two white oaks on Cooper's Point" must control over a course given for the line which will not take it to Cooper's Point, when the location of that place is definitely established, though the trees are not found there. (p. 94).

3. EJECTMENT—*Title of Plaintiff—Adverse Possession.*

   When a plaintiff in ejectment proves that he and those under whom he holds have had adverse possession of the land for a period exceeding ten years, he need not trace his title to the commonwealth. (p. 96).

Error to Circuit Court, Summers County.

Action by C. D. Wiley and others against James E. Hatcher.

Judgment for plaintiffs, and defendant James E. Hatcher brings error.

*Affirmed.*

*M. F. Matheny* and *E. C. Eagle,* for plaintiff in error.

*T. N. Reed* and *Farley, Sutphin & Ward,* for defendants in error.

ROBINSON, JUDGE:

Trial of this action in ejectment was had by jury and resulted in a verdict for plaintiffs. Judgment thereupon followed. Defendant assigns error and seeks a reversal.

The whole controversy turns on the location of the true line between a tract of land long in the possession of plaintiffs and an adjoining tract long in the possession of defendant.

The parties seem agreed that the line runs from a particular corner. But each side claims a different corner for the other end of the line. So a triangular parcel belongs to one tract or the other, according to the establishment of the corner in dispute. As we shall see, the location of this disputed corner was a matter for the jury to determine, mostly from parol testimony. Their finding is by no means unsupported by the evidence. Certain it is, the finding is not against a clear preponderance of the evidence. The jury were properly instructed. We cannot disturb their verdict.

Plaintiffs' deed calls for the line of defendant's land. Defendant says that plaintiffs are bound by this call of their deed and can claim only to the line of his land. But the question still remains, where is the proper location of the line in relation to defendant's tract? Defendant has not had an enclosure of the disputed territory, nor has he had possession of it to the exclusion of plaintiffs. The greater portion has lain in the common. Indeed plaintiffs long had possession of a part of the disputed territory until defendant entered shortly prior to the beginning of this suit. Plaintiffs are bound by the true location of the line of defendant's tract, since their deed calls for the line of his land, but they are not bound by any location of the line that defendant sees fit to make. If the line is where plaintiffs claim, the disputed parcel is a part of the tract which has long been in their possession under

claim and color of their deed. Their possession of the tract has extended over this parcel also. If the line is where defendant claims, this disputed parcel has been in his possession as a part of his tract, except as to the portion which plaintiffs have actually occupied. Though plaintiffs' deed calls for defendant's line, plaintiffs are entitled to claim their tract to the true location of that line.

Defendant testifies that "the Syms line" is the true line of his land. Deeds in his chain of title, as well as deeds in plaintiff's chain of title, plainly show that an old line called "the Syms line" is the division line between these two tracts of land. According to defendant's title papers "the Syms line" extends from the corner well established as one end of the line, and as to which there is practically no dispute; to a corner described as "two white oaks on Cooper's Point," a distance of 360 poles. This call for the line is first found in the deed from Beckley to Syms, made in 1842, conveying the land now owned by defendant, where the direction of the line is given as N. 78 E. The later title papers of defendant call for this same line. It appears that "the Syms line" was once called "McDaniel's line," before Syms owned the land. In plaintiffs' title papers there is a deed from Beckley to Cooper, made in 1835, which calls for this line as "Mr. McDaniel's line on Cooper's Point." Then the deed from Cooper to Meador, conveying the land which plaintiffs now own, calls for the line as "John Simses line on Cooper's Point." Clearly, "the Syms line" is the division line between the land of plaintiffs and the land of defendant. There can be no question as to the location of the corner for one end of the line. The testimony of the county surveyor as to the location of that corner sufficiently establishes it. Indeed defendant accepts the location of that corner, but insists that the line shall run from it to a corner other than the one claimed by the plaintiffs. The controversy narrows to a dispute over the location of the end of the line at the corner called for "on Cooper's Point." The testimony establishes a sharp point of the mountain to be Cooper's Point. Old citizens of the vicinity testify that this particular spot has been known by the name for many years. Cooper's Point is found and by the evidence unquestionably established. But the "two white oaks" are not found on it. Nor does the course of the line when run

to it fit the direction call in the old Syms deed. It is N. 65-¾ E., whereas with proper variation from the old call it should be N. 82 E. The distance of 360 poles, however, fits exactly. When the line is run N. 82 E. 360 poles, it goes far off from Cooper's Point, but reaches a small marked white oak on a ridge. Defendant contends that this is the proper corner and that the place is Cooper's Point. The parol evidence is clearly against his contention in this particular. Besides, when the line is run to that place it must improperly go far across another division line of plaintiffs' land and must eliminate one of the lines of plaintiffs' survey as well as a clearly marked and well established corner of the same. If the line is run to the place established by the old people as Cooper's Point, it fits with adjoining surveys. When the survey of plaintiffs' tract was made in 1835, Cooper's Point was recognized therein as being far to the left of the place where defendant now contends it should be found. It was then recognized as being to the left of the clearly marked and well established corner which defendant would now eliminate or disregard. All the witnesses well qualified to testify in the particular, old men speaking from the notoriety of early days, locate Cooper's Point where this early survey of plaintiffs' land located it.

Defendant relies on the fact that he has shown a small marked white oak at the end of the line when run on the course for which the old deed calls, while the two white oaks that are called for "on Cooper's Point" are not there. The evidence as to the marks on the small white oak and as to its age is of doubtful consequence. At any rate that tree is not "on Cooper's Point." It can have no standing as a corner since it is not at the place it should be. The line calls not simply for white oaks. Those white oaks to be recognized as corner trees for the line must be "on Cooper's Point." That place is a natural monument that cannot be disregarded. True, the white oaks are not found "on Cooper's Point," but there is no evidence in the case that they were never there. There has been ample time for them to disappear since 1842. Defendant does not even undertake to prove that the white oaks as called for were never since date of the deed at the place which the witnesses establish as Cooper's Point. Trees naturally

fall, decay and disappear, but the point of a mountain is eternal in its existence.

In locating the boundaries of land, ordinarily course and distance must yield to a call for a natural monument. Chief Justice Marshall said: "All lands are supposed to be actually surveyed, and the intention of the grant is to convey the land according to that actual survey; consequently if marked trees and marked corners be found conformable to the calls of the patent, or mountains or any other natural objects, distances must be lengthened or shortened, and courses varied so as to conform to those objects." *McIver* v. *Walker,* 9 Cranch 173. In the case before us, it is only the course that must yield. The distance fits the call for the natural monument—the sharp point of the mountain. The course can be changed or disregarded, but the fixed location of the point of a mountain cannot be moved to another place. The evidence abundantly establishes the location of each of the corners pertaining to "the Syms line." That line must be drawn between them. The jury most properly so found. The words of Judge Tucker are appropriate here: "If a patent or deed refer to any notorious landmarks, or natural boundaries, which cannot be mistaken, and are not liable to change or decay, as the corners or angles of a plat, such notorious landmarks are to be regarded as termini, from whence straight lines are to be run from one to the other, without regard to the correspondence of either course or distance, which may in such cases be mistaken in the deed." *Dogan* v. *Seekright,* 4 Hen. & M. 130.

It was not incumbent on plaintiffs to trace their title to the commonwealth. The testimony sufficiently shows that they, and those under whom they hold, have been in the continuous exclusive possession of the tract to which the disputed parcel belongs for a period much longer than the statutory bar. That possession extended to the bounds of their deed. It extended to "the Syms line." They were in possession of the tract claiming to that line. They may recover in ejectment under such circumstances without establishing a chain of paper title running to the commonwealth. *Riffle* v. *Skinner,* 67 W. Va. 75.

An order will be entered affirming the judgment.

*Affirmed.*