7795.  WILLIAMSON *et al. v.* MAYOR &c. OF SAVANNAH.

1. While it is a prerequisite to suit against a municipal corporation in this State for injury to person or property that a "claim for money damages" be presented in writing to the governing authority of the municipality for adjustment, "stating the time, place, and extent of the injury, as near as practicable, and the negligence which caused the same," and a notice which fails to specify any amount of money as damages falls short of this requirement, it is not essential that the amounts claimed in both the notice and the suit should be identical.

2. Where a change is made by a municipality in the grade of a street, and the market value of real property abutting thereon is thereby decreased, the owner has a cause of action against the municipality, and the measure of damages is the difference between the market value of the property before and after the change of the grade.

(a) The cost of filling in lots, to raise them to the level of the street, may be proved, not as an independent item of special damages, but only as a fact or circumstance throwing light upon the general question of diminution of the market value.

3. There being no testimony from which it could be clearly inferred that the market value of the entire tract of land belonging to the plaintiffs, abutting the street, the grade of which had been changed by the municipality, had been decreased by reason of such change, the burden of establishing this fact, which rested upon the plaintiffs, was not successfully carried, and the trial judge did not err in awarding a nonsuit.

4. In view of the ruling last stated, it is not necessary to pass upon the remaining exceptions.

DECIDED APRIL 25, 1917.

Action for damages; from city court of Savannah—Judge Freeman.  June 20, 1916.

*Osborne, Lawrence & Abrahams, Raiford Falligant,* for plaintiffs.  *Robert J. Travis, D. S. Atkinson,* for defendant.

WADE, C. J.  1.  It was held by this court in the case of *Mayor &c. of Macon* v. *Stringfield,* 16 *Ga. App.* 480 (85 S. E. 684), that since section 910 of the Political Code of 1910 provides that any person, firm, or corporation having a "claim for money damages" against a municipality of this State on account of injury to personal property must, as a prerequisite to bringing a suit to enforce such demand, first present in writing such claim to the governing authority of the municipality for adjustment, "stating the time, place, and extent" of the alleged injury as near as practicable, and the negligence which caused the same, the paper required to be presented must state the amount of money claimed, as otherwise there would be no compliance with the requirement that the "extent"

of the injury must be alleged. No discussion of the purpose of this legislation or of the object to be accomplished by the notice required is necessary, since the purpose and object thereof were considered and discussed by this court in that case. It may be said, however, that where the notice served upon the governing authority of a municipality makes a claim for an amount less than that for which suit is thereafter instituted, the purpose of the law has evidently not been defeated, since the city has been thereby afforded an opportunity to adjust the claim for an amount less than that demanded in the suit, and it could not be rationally inferred, where the city declined to pay the smaller amount claimed in the prerequisite notice, that it would nevertheless have paid the larger amount thereafter claimed in the suit, and that therefore, by suing for an amount greater than that set forth in the notice, the city was denied an opportunity to adjust the claim without incurring the expense of suit. Again, where the notice served upon the governing authority claims a large or even exorbitant amount for the injury alleged, and the municipality declines to pay the amount claimed, and it does not appear that the municipality offered to pay any less amount than that demanded in the notice, it can not reasonably be held that the municipality was denied an opportunity to adjust the claim, if thereafter the plaintiff should bring suit for an amount less than that named in the prerequisite notice. The refusal of the city to pay an amount which it might regard as exorbitant or unreasonable, without making any counter proposition or proposing to pay any less amount than that so demanded, must be considered as a denial on the part of the plaintiff of *all* liability on account of the alleged injury to person or property, and as a refusal to pay not only the excessive demand made by the plaintiff, but any amount whatever, and would therefore leave the way open to the plaintiff to institute his action for any amount of damages he might see fit to allege, without putting himself in opposition to the provisions of section 910, supra, requiring him to give notice as to the "extent" of his demand. So too, where the notice claims damages in a sum named and suit is brought for that identical sum, but the suit is thereafter amended so as to decrease the amount of damages therein alleged, such an amendment will not make inadmissible as evidence the original notice served upon the municipality prior to the bringing of the suit.

It is unnecessary to refer to the great latitude allowed as to amendment, under our system of practice, and no sufficient reason appears why the general rules applicable to the amendment of other suits would not apply to suits against municipalities for injury to person or property. It is true that in *Mayor &c. of Macon* v. *Stringfield,* supra, it was said, by way of illustrating the necessity for claiming, in the notice prerequisite to a suit against a municipal corporation for injury to person or property, some particular amount of money, in order to comply with the requirement of the law that the "extent" of the injury must be set forth, that "if the injured person claimed an exorbitant amount . . . the city officials would not be willing to effect a settlement on the terms named by him, whereas if he named a reasonable and moderate amount an immediate settlement might be accomplished or negotiations begun which would result in a settlement;" but the actual and only holding in that case is that "a notice which fails to specify any amount of money as damages is not a compliance" with section 910 of the Political Code; and that "the word 'extent,' as used in this section of the code, bearing in mind the object to be accomplished by the notice, must include not only the nature and character of the injury for which payment is demanded, but also the amount of the damage, measured in the only terms by which the city could adjust the same, to wit, in dollars and cents."

It was held in the case of *Langley* v. *Augusta,* 118 *Ga.* 590, 600 (45 S. E. 486, 98 Am. St. R. 133), that the notice required by the section under discussion need not be drawn with all the technical nicety essential in framing the petition in a suit, but it is well settled that there should be no material variance between the claim for damages furnished the officials of the municipal corporation prior to the suit and the action for damages itself. *Smith* v. *Elberton,* 5 *Ga. App.* 286 (63 S. E. 48). "If the notice and the petition correspond in all substantial respects as to matters information of which is required to be given, the variance is immaterial." *Langley* v. *Augusta,* supra. "The purpose of the law was simply to give to the municipality notice that the citizen or property owner has a grievance against it. It is necessary only that the city shall be put on notice of the general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words 'as near as practicable,'

that absolute exactness need not be had.  A substantial compliance with the act is all that is required; and when the notice describes the time, place, and extent of the injury with reasonable certainty, it will be sufficient.  .  .   The petition need not exactly follow the notice, and an immaterial variance between the two as to time, place, or extent of injury will not amount to a fatal variance." Id. 600, 601.  We think that "extent of injury," as used in the last sentence above quoted, includes *more* than the extent of the alleged injury measured in dollars and cents.  For instance, where the claim served upon the municipality alleges injury of a nature and character described, and claims a certain amount as money damages therefor, the "extent" of the injury for which compensation is sought, whether temporary or permanent, should be likewise set forth, and, under the ruling quoted, if a material difference occurs between the allegations in the claim and in the suit, as to the "extent" of the injury, considered in the sense above suggested, the notice would be fatally defective; but we do not think a variance between the amount of damages claimed in the demand made upon the city before suit and the amount thereafter named in the suit itself would constitute such a fatal defect.

It will be recalled that section 910, supra, allows the municipal authorities 30 days after presentation in writing of a claim for damages in which to act on the claim, before suit can be instituted, and where *some* money demand is made for damage to person or property, and the notice otherwise so far complies with the requirements of the statute as to inform the city authorities of the nature and character of the demand, they are advised not only of the fact that the person making the claim has a grievance against the city, but also that he claims money damages therefor, and, within the 30 days allowed by law, opportunity is thus afforded for the city authorities and the injured person to arrive at an adjustment of the difference between them before suit can be instituted, regardless of whether the amount of money claimed in the notice is greater or less than the amount claimed in the suit.

Ordinarily one may amend a suit for damages by praying for the recovery of a larger amount than that sought in the action as originally brought.  "An allegation in a petition, that under the facts pleaded the plaintiff is entitled to recover a certain amount, is not an estoppel in judicio which precludes an amendment that un-

der the same facts the plaintiff is entitled to a larger recovery." *Huger* v. *Cunningham,* 126 *Ga.* 684 (4) (56 S. E. 64). It is equally true that such a suit may be amended by asking for a recovery of a smaller amount than that originally sought. If it were necessary that the notice and the suit should both claim the *identical* amount, notwithstanding the liberal practice as to amendment under the laws of this State, it would result that in cases where the evidence adduced at the trial of a claim for damages against a municipality would authorize the recovery of a larger amount than the amount named in the demand made upon the governing authority of the municipality (on proof of injury of the same nature and character as that alleged in the notice), the plaintiff would be prevented from recovering any larger amount than that named in the original notice, notwithstanding the municipality, before the suit was instituted, refused to pay *any* amount whatsoever—or in other words, notwithstanding a denial in effect by the municipality of all liability on account of the alleged injury. This would be both unreasonable and unjust, where it is not shown that the city recognized any liability whatever by proposing to pay any amount on account of such injury. Of course, where the plaintiff makes an exorbitant demand for alleged injury and the city refuses the demand but tenders a less amount, such action on the part of the city authorities, where properly taken and properly pleaded, could protect the city against the actual court costs, where the suit as brought is for an amount equal to or less than the amount tendered as compensation for the injury by the municipality.

2. Where a change is-made by a municipality in the grade of a street, and the market value of real property abutting thereon is thereby decreased, it is well settled by numerous decisions of the Supreme Court and of this court that under the provisions of article 1, section 3, paragraph 1 of the constitution (Civil Code of 1910, § 6388), the owner of the realty has a cause of action against the municipality. It is equally well settled that in such cases the measure of damages is the difference between the market value of the property before and after the change of the grade. *City of Atlanta* v. *Atlas Realty Co.,* 17 *Ga. App.* 426 (87 S. E. 698), and cases there cited. While the plaintiff is entitled to recover only for the diminution in the market value of the property, it is competent to prove the cost of filling in lots to raise them to

the level of the street, the grade of which has been changed, not as an independent item of special damage, but as a fact or circumstance throwing light upon the general question of diminution of market value. Id.

3. It appears to be well settled that in determining the relative amount of damage and benefit resulting to a parcel or tract of land on account of the opening of a street through it, or by changing the grade of a street already existing, the entire tract or parcel must be considered, and not merely the part immediately adjacent to the street or abutting or bordering thereon (Shawneetown v. Mason, 82 Ill. 337; 25 Am. R. 321, 324); and if the value of the property considered as a whole is increased on account of such improvements, no damages can be recovered, notwithstanding the market value of certain lots included in the tract or constituting a portion of the entire tract or parcel may have been lessened by such improvements. The resulting advantages and disadvantages brought about by changing the grade of a street must be estimated upon the tract as a whole, and not upon a part. Baltimore & P. R. Co. v. Springer, (Pa.) 13 Atl. 76. The measure of damages being the diminished market value of the property through which or abutting which the street runs, it would be obviously unjust to allow a plaintiff to select arbitrarily any particular lots out of a tract of land through which the street runs, and recover damages based on testimony showing that the market value of these particular lots has been decreased, though the market value of the entire tract, including the lots damaged, has been materially enhanced by changing the grade of the street.

The plaintiffs in this case introduced as a witness a civil engineer who testified what amount of earth would be required to fill in certain lots of land which comprised a part of a large tract belonging to the plaintiffs. He further testified that he was familiar with the condition of the property prior to the change of grade in Waldburg street, and that before the grade of that street was altered the propery was "bottled up," and that in the opening of Waldburg street and the elevation of the grade of that street the value of the entire property belonging to the plaintiffs was enhanced—that the opening and elevating of the street "was an advantage to the property." The chairman of the board of tax-assessors of the City of Savannah testified in behalf of the plaintiffs that there were

other lots adjacent to the lots which the plaintiffs alleged had been damaged by the elevation of the grade of Waldburg street, which were assessed for taxation as the property of the plaintiffs,—"a large tract of land on each side, east and west, of these lots." He further testified: "I think the general effect of the opening of these streets and grading them across the tracks was, generally speaking, to enhance the Schley estate's value all along that territory. There used to be a baseball park over on the eastern side of the railroad track. There was no change made in the assessment of those lots at all after this change in grade." Another witness introduced by the plaintiffs testified that in 1911 he was city engineer of the City of Savannah, and that he had a "general recollection of the conditions generally, prior to the grading of those streets. As to whether or not this Schley property in question—the subject-matter of this suit—was accessible at that time, will say that I think Waldburg street was closed up with a coal chute. I don't think it had ever been opened prior to that time. . . As to whether the grading of these streets across the railroad enhance the value or diminish the value of that entire tract, will say I am not a railroad expert, and I would prefer not to answer that question." A witness testified as to the cost requisite for filling in the number of cubic yards which the engineer had testified would be necessary to raise the grade of the lots abutting on the street to the present elevation thereof. Another witness for the plaintiffs testified that he was in the real-estate business, and had been in that business for 12 years, in the City of Savannah, and was familiar with the lots of land named in the suit, and was also familiar with the general conditions before 1911 and since that date, in respect to this property. He testified further: "The value of these various lots of land prior to the grading of the streets—the raising of the grades of the streets, was about two hundred and fifty to five hundred dollars apiece,—about that. As to the damage to the market value of these lots by the raising of the grades at Waldburg and New Houston streets, will say they have been injured to the extent it would cost to fill in those lots to the present grade of the street, and they really have been damaged a little more than that, for the reason that if any industry of any kind wanted to locate along the side of the track, it would be more expensive to put sidetracks in there. I don't know how you would get at that damage.

I think the damage is what it would cost to fill in the lots to the street level. The amount of damage is what it would cost to fill in those lots, and according to my estimate it would be about fifty per cent., according to the figures furnished as to what it would cost to fill them up." On cross-examination this witness further testified: "I do not think the value of the lots prior to the raising of the grade has nothing [anything] to do with it. The condition has not been changed. It was a grade crossing then and it is a grade crossing now. . . The value of the lots prior has nothing to do with the damage to the lots. My testimony is that the only element to be considered is the cost of filling in. . . Based upon those figures furnished [the data as to the cost of earth and the amount necessary to fill in], I say the lots have been damaged substantially fifty per cent. I say that from the estimate they would put on the lots at the time just before the filling in was done. Their value before the filling was done [has] got nothing to do with the amount of damage. That is the value I put on the lots" (referring to values on a paper handed to witness by counsel). There was introduced in evidence a memorandum of values testified to by this witness, showing market value before the change in grade, amounting to a total valuation of $15,550.

This was the entire evidence presented on the question of value; and it will be noticed that there is absolutely no testimony to show that the value of the *whole* tract of land, of which the lots alleged to have been injured by the change of grade in the street constituted but a part, had been diminished by reason of the change of grade. The witness who testified that the value of the lots abutting the street had been in his opinion lessened fifty per cent. by the change in grade further testified and reiterated that he did not consider the value of the lots prior to the change of grade in forming his estimate, or as being a matter which should be considered, but clearly asserted that his estimate of damage to these particular lots adjacent to the street was based entirely upon the cost of filling in these lots up to the new elevation of the street. He did not attempt to testify that the entire tract of land belonging to the Schley estate and claimed by the plaintiffs in this suit, and which was assessed by the City of Savannah for taxation as their property, was injuriously affected, so far as its market value was concerned, by the opening up or elevation of Waldburg street. The civil en-

gineer who made the estimates as to the amount of earth that would be required to raise the level of the lots named in the petition of the plaintiffs, and which abutted on Waldburg street, testified that in his opinion the entire tract of land belonging to the plaintiffs had been enhanced in value by the elevation of the street's level. Nowhere was there *any* testimony that the market value of the tract of land owned by the plaintiffs, which included as a part thereof the lots alleged to have been damaged, had been lessened in value by the act of the city in changing the grade of the street as described in the petition of the plaintiffs. If a plaintiff could select certain lots out of an entire tract belonging to him and sue for the difference in market value of these lots before and after the grade of a street abutting them had been altered, notwithstanding the value of the entire property, including these lots, had been greatly enhanced thereby, this would be not only in direct opposition to the ruling in *Nelson* v. *Atlanta*, 128 *Ga.* 252 (57 S. E. 245), but also in opposition to the general principle that an increase in value resulting from improvements may be set off against damage caused by the grading of streets. *Moore* v. *Atlanta*, 70 *Ga.* 611, 617; *Hurt* v. *Atlanta*, 100 *Ga.* 274 (28 S. E. 65).

The evidence offered in behalf of the plaintiffs clearly failed to show any diminution in market value of the entire tract of land belonging to the plaintiffs and traversed by the street, the grade of which was changed by the city, and therefore the trial judge did not err in awarding a nonsuit.

>            *Judgment affirmed.   George and Luke, JJ., concur.*