O. B. POLK et al., Plaintiff in Error, v. CITY OF MEMPHIS et al., Defendant in Error.

Western Section.   March 31, 1932.

Petition for Certiorari denied by Supreme Court, July 23, 1932.

Holmes, Canale, Loch & Glanklen, all of Memphis, for plaintiffs in error.

Walter Chandler and Canada, Williams & Russell, all of Memphis, for defendants in error.

HEISKELL, J.   This is a suit by plaintiffs, O. B. Polk and others, seeking a recovery against the City of Memphis and the several railroad companies mentioned as defendants, for damages to the property of the plaintiffs by reason of the change of grade of Poplar Avenue in the City of Memphis in the construction of the Aulon or Poplar Avenue viaduct. The purpose of this viaduct was to separate the grade of Poplar Avenue and that of the several railroads mentioned, at Aulon. The declaration filed in the case is as follows:

"The plaintiffs sue the defendants for $60,000 as defendants caused to be constructed a viaduct on Poplar Boulevard in front of the property owned by the plaintiffs described as per plat attached, marked Exhibit "A."

"This property had been improved and had stores and residences on it, and fronting on Poplar Boulevard. The plaintiffs allege that the construction of this viaduct cut off the approach from Poplar Boulevard entirely from this property, rendering it almost worthless.

"Prior to this construction by the City, this property was very desirable for business and for residence purposes, but that feature has now been almost entirely destroyed by the removal of approach from Poplar Boulevard, the main approach to this property.

"Plaintiffs show that they own sixty (60) acres fronting on Poplar Boulevard and Buntyn Avenue. The defendants have closed Buntyn Avenue and rendered Poplar Boulevard impossible as an approach for ingress or egress to this property. The plaintiffs had constructed a house on this lot, but by reason of the change of grade on Poplar Boulevard and closing Buntyn Avenue, it is now of little or no value to plaintiffs.

"Plaintiffs further show that prior to the construction of this viaduct by defendants, Poplar Boulevard had an established grade for many years recognized and served the tenants and uses of this property well and conveniently, to which former grade the improvements were built to conform; and plaintiffs' property abutted on Poplar Boulevard for a distance of one thousand five hundred (1500) feet.

"Plaintiffs show that the defendants, City of Memphis, is a municipal corporation, chartered under the laws of Tennessee. The Louisville and Nashville Railroad Company is a corporation chartered under the laws of the State of Kentucky, having its principal office in the City of Louisville, Kentucky. The Nashville, Chattanooga and St. Louis Railway Company is a corporation chartered under the laws of the State of Tennessee, having its principal office in the City of Nashville, Tennessee; the Union Railway Company is a corporation chartered under the

laws of the State of Tennessee, with its principal offices in the City of Memphis, Tennessee. The Illinois Central Railroad Company is a corporation chartered under the laws of the State of Illinois with its principal office in the City of Chicago, Illinois.

"Plaintiffs show that on the 22nd of February, 1927, the City of Memphis passed on final reading an ordinance to provide for and require the separation of the grade of Poplar Boulevard from the grade and tracks of the said railroad companies, and said ordinance being entitled: "An ordinance to Provide for a Viaduct and approaches thereto over the tracks of the Louisville and Nashville Railroad Company, the Nashville, Chattanooga & St. Louis Railway Company, the Union Railway Company and the Illinois Central Railroad Company at the intersection of said tracks with Poplar Boulevard, in the City of Memphis, Tennessee," which said ordinance is here referred to and made a part of this declaration, and a copy of same hereto attached and marked Ex. B.

"Plaintiffs further show that while this change of grade in Poplar Boulevard was of great value to the defendants, it was of inestimable damage to these plaintiffs, rendering their property worthless and inaccessible from Poplar Boulevard and Buntyn Avenue, the only approaches they had prior to the construction of this viaduct.

"Plaintiffs further show that they have been damaged seriously by the construction of said viaduct by a depression extending five hundred feet (500) of property on Scott Avenue, owned by the plaintiffs. Said property is materially injured by being placed in a depression which deprives it of ingress and egress from Scott Avenue. This ingress and egress was used prior to the construction of said viaduct and approaches thereto.

"Wherefore the plaintiffs sue the defendants jointly and severally, for the sum of $60,000 and demand a jury to try this cause."

The defendants plead not guilty, and the statute of limitations. but the only questions that went to the jury arose under the general issue. The jury returned a verdict for defendant and after motion for new trial overruled, plaintiffs appealed and assigned errors.

The first assignment is that there is no evidence to support the verdict, but we think this may be considered as abandoned as it is not insisted on in argument, oral or in brief.

Assignments 2 to 6 inclusive will be treated together as they all involve the one proposition, whether or not the damages to that portion of plaintiff's land conceded to be damaged can be offset by benefit to that part of the land as to which there is proof of benefit. Under these assignments it is contended that the court erred in direct-

ing the jury to consider this property as a whole in computing damages and to offset benefits to one portion against damages to other portions, and also in refusing to leave to the jury the question as to whether or not this whole property should be considered as one tract.

Certain facts are not in dispute. Plaintiffs inherited this land in the shape of a tract of about sixty acres, said land having been in the Polk family for over forty years. It had never been platted or subdivided, nor separated into parcels except that it was traversed by five railroad tracks, making numerous irregular shaped parcels of land, and that Poplar Avenue divided the land so that a tract of about fifteen acres was on the north side of the highway and the remainder of the land on the south side. It is conceded that the land on the south of Poplar Avenue is damaged by the improvement, but defendants insist that the increase in value of the fifteen acres on the north side of the avenue is greater than the loss of value of all the land on the south of the avenue or highway, and defendants' witnesses so testify. Plaintiffs insist that the benefit derived by the fifteen acres on the north, cannot be offset against the damages to the other property. Defendants contend that the land of plaintiffs involved in this suit is all one tract, and therefore even under the rule in condemnation cases, benefits to one part can be offset against damages to another part. Defendants say that plaintiffs, from the filing of the declaration down to almost the end of the trial, treated the property as a whole and subject to computation of damages and benefits as a whole and are now estopped to insist to the contrary. Plaintiffs admit the rule of estoppel invoked, but deny that the property is one tract, and deny that they sued for damages to it as a whole or treated it as a whole in pleading or proof and they contend that benefits to the one parcel cannot be considered as against the damages to other parcels.

Defendants contend that this suit being brought under Section 1988, Shannon's Code of 1917, that "All benefits accruing by reason of such improvement . . . shall be allowed to affect, reduce and offset the damages hereinbefore provided for," whether the land be considered as one tract or not, provided the damages and benefits be the result of the same improvement. In other words, the contention is that when the statute provided for the recovery of damages against the city by reason of a change of grade in the street, a right which the property owner did not have before, that the statute provided also for the owner accounting for benefits according to a different rule from that laid down in condemnation cases, that incidental benefits to one tract cannot be offset against incidental damages to a separate and different tract. This construction of this statute does not become material if the land involved in the present case is to be considered as one tract. On the other hand, if the several parcels

are to be considered as separate and distinct tracts, under the rule in condemnation cases, it must be conceded that no set-off can be allowed.

Defendants contend in the first place that plaintiffs in their declaration treated this land as one tract when they say "that they own sixty acres on Poplar Boulevard and Buntyn Avenue" . . . which "property abutted on Poplar Boulevard for a distance of 1500 feet." Defendants refer to the opening statement of the case by counsel for plaintiffs to show that the idea of the suit was damage to the sixty acres as a whole and to the opening statement of counsel for defendants which passed unchallenged by counsel for plaintiffs, to show that it was conceded that the land was to be considered as a whole and benefits to one part offset against damages to another part. This opening statement of counsel for defendant contains this:

"Now, His Honor I am sure will tell you if you find some of the property has been damaged and some of it has been benefited, and the benefit equals or exceeds the damage, then there can be no recovery in behalf of the plaintiffs.

"There are some several lots there, I have forgotten how many, five different lots, I believe. It may be you will find some one or two or more of those lots you feel are damaged in a way, but if on the other hand you find one, two or three of those lots have been benefited, and that the benefit to those lots is as much as the damage to the others, then you cannot return a verdict for the plaintiffs. You have got to put it all in the pot and balance it up and say whether or not in the end the general balance you strike is a damage to the property or a benefit."

Defendants also insist that in the introduction of testimony on both sides the land was treated without objection and by common consent as a whole and damage to one part subject to offset by benefits to another part, and that plaintiffs did not change this theory and conduct of the case until it was about ready to go to the jury.

Plaintiffs on the contrary deny that in their declaration they treated the land as one tract, because they say they referred to a plat attached as giving the only description of the land contained in the pleadings, and that this plat showed the land divided into different parcels.

Mr. O. B. Polk, one of the plaintiffs, on direct examination testified:

"Q. Now, Mr. Polk, in the handling of this property and the ownership of it for a long number of years, have you in that time formed an opinion in reference to the value of those parcels of property? A. Yes, sir.

"Q. First, I will ask you this question. Has it been platted out in separate parcels, distinguishing it in the manner in which

it is shown on this plat spread here on the floor? A. No, sir; nothing there separating it except those railroads.

"Q. Of course, the railroads are shown on the plat? A. Yes, sir; and I think the right of way of some of them is fenced.

"Q. And over here, not shown on this plat, is the Missouri Pacific Railroad? A. Yes, sir; immediately west of Buntyn Avenue.

"Q. Now, I will ask this question: Has this property—and when I say this property I mean both sides, the north side and the south side—has it been damaged or enhanced in value by the erection of this project?"

This shows that the sixty acres of land remains just as it was many years ago except that by the intersection of various railroads and Poplar Avenue it has been cut up into many parcels of different sizes and shapes. It is conceded that both street and railroads have acquired only easements and that subject to said easements, the fee as to the whole sixty acres remains in plaintiffs.

We are referred to only one Tennessee case bearing on the question whether under this state of facts, the court should in assessing damages, regard this as a single tract. That case is City of Knoxville v. Phillips, 162 Tenn., 328, 36 S. W. (2d), 434, involving the right of the property owner to damages under the same statute invoked in the present case. The plaintiff's property was divided by a railroad right of way separating one portion from the remainder, fronting on the street where the grade was changed. The court said:

"Counsel for the city made the further point that the triangular lot had been severed from the main lot by the railroad right of way, and since the latter did not abut upon Broadway, the owners were entitled to recover no damages for injury thereto.

"The trial court very correctly held otherwise. The railway company only had an easement, the fee being in Mr. and Mrs. Phillips. The grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor. McLemore v. Railroad, 111 Tenn., 657, 69 S. W., 338, 51 Corpus Juris, 539."

Counsel for plaintiff made no reference to this case except to say that the opinion makes reference to other Tennessee cases which deal with condemnation proceedings, thereby treating the rule under the statute providing for damages for change of grade as the same as the rule applied in condemnation cases. Conceding this to be so, still the case remains an authority for the proposition that in a suit like the present, right of way easements are not to be considered as dividing ownership, or interrupting unity of property. If in the

Knoxville case the separation of a part of the plaintiff's lot by a railroad did not prevent considering the lot as a whole in assessing damages, we do not see how to escape the conclusion that the several easements intersecting the property of plaintiffs in the present case, still leave it one piece of land for the purpose of settling the question of damages.

If this is the effect of the only Tennessee case bearing on the question, it is not necessary to consider conflicting authorities from other jurisdictions, no matter how strong they may be. Counsel for plaintiffs cite Tennessee cases holding that statutes providing for damages are construed liberally in favor of the property owner. It was not necessary to look further than Knoxville v. Phillips to find this announced in regard to the statute involved there and here, but this does not help the plaintiffs in the present case unless it be carried to this extent, that when the property owner is suing for damages that portion of his property cut off by an easement will be considered as unsevered for the purpose of allowing damages on the whole, but if the city asserts benefits to one portion as an offset to damages to the other portion, then the easement will be considered as dividing the property into two separate lots or tracts. This is the only way to escape the effect of Knoxville v. Phillips as an authority against plaintiffs in the present case and if the rule is to be so declared, it must be done by the Supreme Court and not by this court.

In the absence of such distinction as just indicated, we must take the Knoxville v. Phillips case as settling the question that notwithstanding the various easements intersecting the sixty acres of plaintiffs, it must still be treated as one tract, in assessing damages and benefits. This tract has been divided and separated in no other way than by these easements. We do not see any question for the jury. The facts are not in dispute, it is only the conclusion to be drawn. It was treated as a question for the court in the Knoxville case and we think it is so in the present case.

Applying the Knoxville case to the present case and ignoring the contention of counsel for the defendant as to the difference between the rule in a case like this under Code Section 1988 and the rule in condemnation cases, and leaving out of consideration the contention that plaintiffs are estopped by treating this land as one tract in pleading and proof until near the end of the trial, and considering the land in question just as it appears on the face of the plat made an exhibit to the declaration, we think the court was right in the instruction given to the jury and in the requests for instructions refused and therefore all these assignments must be overruled.

There is, however, much force in the contention of counsel for defendants, that plaintiffs are committed to the theory in pleading and

proof that the land in question is to be treated as one tract. Counsel for plaintiffs say that the plat made exhibit to the declaration showed the various parcels of land. But when Knoxville v. Phillips is applied to the plat, it describes a single, continuous unbroken tract. Mr. Polk, the leading plaintiff, says it has never been divided except by the easements shown. Then as to the proof, plaintiffs say they asked the witnesses about damage to the several parcels. That is true, but merely as a means of showing the result as to the whole tract. We might suppose a case involving damage to a farm, in which there was no contention but that the land involved was a single tract and yet for purposes of estimating damages, the farm might be divided into a number of parcels. Some fields might be damaged more than others. Some portions as to damages and benefits might differ according to location and elevation. These differing parcels might be indicated in pleading by a plat or diagram, followed in the testimony, without at all departing from the theory that the purpose was to show the damage resulting from the decrease in value of the whole tract, and that the land was to be considered as one tract. In the present case the whole idea seemed to be that it was all right to estimate damages and benefits to the tract as a whole, until defendant's witnesses testified that the benefit to the fifteen acres on the north side of Poplar over-balanced the damages to the other parcels combined.

While we have rested this case so far on the case of Knoxville v. Phillips, yet that case is not without support in the decisions of other states, in change of grade cases. Peck v. Borough of Bristol, 74 Conn., 483, 51 Atl., 521; Williamson v. Mayor, etc. of Savannah, Georgia, 92 S. E., 291, and 97 S. E., 104.

The first of these cases, the Connecticut case, involved a question very similar to that in the present case. The court stated the facts thus:

"The appellant owns a considerable tract of land in the borough, through and adjoining which Goodman Street runs. This land is the remnant of a still larger tract belonging to the appellant, through which, in the development of the borough, said street was constructed, and from which building lots have been from time to time sold. The remaining land lies upon both sides of the street. That upon the west side, being the smaller in quantity, lies directly opposite that upon the east side. That upon the east side extends back from the street to a considerable depth, and has an unbroken frontage upon the street, save that a single building lot, of ordinary depth, had, before the improvement in question, been sold to another person. Around the rear of this lot the appellant's land extends. The borough decided

to change, and did change, the grade of said street adjacent to this land."

The court then continues:

"The warden and burgesses, in attempting to comply with the requirements of the law pursuant to the borough charter, and assess the benefits and appraise the damages resulting to adjoining property owners from said change of grade, treated the appellant's land as one piece, and appraised the damages and assessed the benefits thereto by reason of said improvements as equal. The court below affirmed this action. We fail to discover the legal impropriety or error in so treating the appellant's land as one tract. One might walk over every inch of it, and never set foot on the land of any other owner. The existence of the highway through it did not break its continuity. The appellant owned the fee entirely across the street. The alienated lot served only to break the regularity of the lines of the whole, and the continuity of the street frontage. It did not break the chain of connection. The tract was, even in the most literal and technical sense, a single, continuous piece of land. The warden and burgesses, to be sure, might, for the purposes of assessment and appraisal, have treated it in subdivisions; but we know of no rule of law or requirement of statutory construction applicable to the authority which they were exercising which compelled them, upon the penalty of committing legal error, to treat it as any particular number of independent tracts. The appellant's premise thus failing, his argument upon this branch of the case, otherwise pertinent, requires no further attention."

The Georgia case went to the appellate court twice. The plaintiff owned certain lots, subdivisions of a forty acre tract and sued for damages to only a portion of his property, but it developed in the proof that plaintiff owned other lots adjacent to the lots which he alleged had been damaged by the change of grade and a portion of the property was separated by railroad tracks. In deciding the same question involved in the present case, the court said:

"It appears to be well settled that in determining the relative amount of damages and benefits resulting to a parcel or tract of land on account of the opening of a street through it, or by changing the grade of a street already existing, the entire tract or parcel must be considered, and not merely the part immediately adjacent to the street or abutting or bordering thereon (Shawneetown v. Mason, 82 Ill., 337; 25 Am. Rep., 321, 324), and if the value of the property, considered as a whole, is increased on account of such improvements, no damage can be

recovered, notwithstanding the market value of certain lots included in the tract or constituting a portion of the entire tract or parcel may have been lessened by such improvements. The resulting advantages and disadvantages brought about by changing the grade of the street must be estimated upon the tract as a whole, and not upon a portion thereof. B. & P. R. Co. v. Springer (Pa.), 13 Atl., 76, 77 and 78. The measure of damage being the diminished market value of the property through which or abutting which the street runs, it would be obviously unjust to allow a plaintiff to select arbitrarily any particular lots out of a tract of land through which the street runs, and recover damages based on testimony showing that the market value of these particular lots had been decreased, though the market value of the entire tract including the lots damaged, has been materially enhanced by changing the grade of the street."

The court says further:

"Nowhere was there any testimony that the market value of the tract of land owned by the plaintiffs, which included as a part thereof the lots alleged to have been damaged, had been lessened in value by the act of the City in changing the grade of the street as described in the petition of the plaintiffs. If the plaintiff could select certain lots out of an entire tract belonging to him and sue for the difference in market value of these lots before and after the grade of the street abutting them had been altered, notwithstanding the value of the entire property, including these lots, had been greatly enhanced thereby, this would not only be in direct opposition to the ruling in Nelson v. Atlanta, 138 Ga., 252, 73 S. E., 245, but also in opposition to the general principle that an increase in value resulting from improvements may be set off against damage caused by the grading of the streets."

Again the court says:

"The evidence offered in behalf of plaintiff clearly failed to show any diminution in market value of the entire tract of land belonging to the plaintiff and traversed by the street, the grade of which was changed by the city, and therefore, the trial judge did not err in awarding a non-suit." 92 S. E., 293 and 294.

"The fact that a railroad, in condemnation proceedings, describes only that portion of a farm which was north of another railroad previously constructed across it . . . could not deprive the owner of the farm . . . of her right to establish and recover damages to her entire farm, when, in fact, such northern portion was a part of the whole." Cook v. Boone, etc. Rwy. Co. (Iowa), 98 N. W., 293.

This case holds that whether the part cut off by a railroad was a part of the whole tract was not a question to be submitted to the jury.

In Illinois the statute corresponding to the Tennessee act under which the present suit is brought, says this:

"Provided that no benefits or advantages which may accrue to lands or property affected shall be set off against or deducted from such compensation, in any case."

Yet, in City of Shawneetown v. Mason, 82 Ill., 337, 25 Am. Rep., 321, the court says:

"A material question in the present case is, whether in determining how much, if any, damage is done to the plaintiff's property, the evidence shall be confined to a particular part of the property claimed by the plaintiff to be damaged, or shall extend to the whole property, and the question determined by reference to the effect the building of the embankment has upon the property as a whole.

"The court below ruled, in the admission of evidence, and instructed the jury, virtually, that the inquiry was limited to the part of the property claimed to be damaged, and that proof of special benefit to any portion of the property was not to be considered.

"This was error. Proof of general benefits resulting from the improvement to this property, in common with other property in the city, was not admissible, but whether this particular property was damaged, within the meaning of the Constitution, depended upon whether it had received such material injury as rendered it less valuable to the owners, or less useful, as a whole, than it would have been but for the embankment having been constructed as it was. We said, in Page et al. v. Chicago, Milwaukee & St. Paul Rwy. Co., supra, in discussing this question as there presented.

" 'It was not the damages to a strip of land lying within a limited number of feet of the roadbed, that the jury were required to assess, but the damages, if any, to the entire tract, by reason of the construction and operation of the appellee's road. It is inadmissible to treat that portion of the property injured as a distinct and separate tract from that portion benefited. If the inconvenience of the road to a certain selected part of the tract will be outweighed by the additional convenience of the road to the residue of the tract, the tract will not be damaged by the inconvenience of the road. A partial effect only is not to be considered, but the whole effect; and the effect, not upon any selected part of the tract, but upon the whole tract. This is not deducting benefits or advantages, from damages but is ascer-

taining whether there be damages or not.' " 25 Am. Rep., page 326.

In other words, the court holds that treating the property of plaintiff as a whole, to offset benefits to a portion against damages to another portion is not deducting benefits or advantages from damages, but is merely a means of determining whether there has been a decrease in value of the whole tract. If not, then plaintiff has suffered no damage. The court applied that rule in the present case, but the Tennessee statute says that all benefits shall be offset.

It is not necessary to discuss the authorities from other states, cited for plaintiffs, which are in conflict with our Tennessee case and the cases in accord therewith. The case of Paducah & Memphis R. R. v. Stovall, 59 Tenn., 1, has no application to the present case. The separate tract there was a mile away from the damaged tract. It is not contended for defendant that benefit to any separate tract of plaintiff could be offset unless the benefit resulted from the same improvement which caused the damage. Besides we are resting this opinion on the contention that plaintiffs' property in the present case was all one tract.

Assignments 7 and 8 refer to the charge given and the request refused as to expert testimony. We do not think there is any error pointed out in these assignments that could have influenced the verdict of the jury.

Assignment 9 insists that it was error for the trial court to refuse to allow the witness, R. M. Hammond, an expert realtor, offered on behalf of the plaintiffs, to testify to the value of property in this immediate vicinity, and in sustaining the objection to said testimony. The witness was being questioned in reference to an actual sale of property in the immediate locality, and if the objection to this testimony had not been sustained, would have testified that in January or February of 1924 he sold to W. W. Fischer one acre of ground on the north side of Poplar Street, 370 feet north of Poplar Street and with no frontage on Poplar Street, but fronting along and just east of the Louisville & Nashville Railroad, for the sum of $2100 cash. The admission of testimony of this character is largely within the discretion of the court.

"In regard to the degree of similarity which must exist, between the property concerning which such proof is offered and the property taken, and the nearness in respect of time and distance, no general rules can be laid down. These are matters with which the trial judge is usually conversant, and they must rest largely in his discretion." 2 Lewis on Eminent Domain (3 Ed.), Sec. 662.

The sale as to which witness proposed to testify was made about three years before. The proof shows that it has been the custom of

the Circuit Judges of Shelby county for years, to limit the time within which sales can be proven to one year. In Green v. Fall River, 113 Mass., 262, sales even within a year were held too remote. Railroad v. Hunton, 114 Tenn., 609, 88 S. W., 182, is cited in support of this assignment, but that case refers to sales made about the same time and it was within the discretion of the trial judge in the present case to say that three years before was not about the same time.

As to assignments 10 and 11, we do not think any error is shown in the action of the lower court in these assignments, and if there was any technical error, we cannot see that it could possibly have influenced the verdict.

Assignment 12 is as follows:

"The court erred in overruling the motion for a new trial seasonably filed on behalf of plaintiffs, because

"1. The court in overruling said motion did not weigh the testimony or make any determination as to where the preponderance of the testimony lay.

"2. The court advanced as a basis for his action in overruling the motion:

" 'I think there should be an end to litigation, and I think, at least, the whole question in this case revolves around whether or not the charge I gave to the jury was a sound exposition of the law; . . .' "

The opinion of the trial judge in disposing of the motion for a new trial is in the record. After disposing of the objections to his rulings as to evidence and as to his charge and expressing satisfaction with what he did in the trial, he says this:

"Now another strong point is made that the verdict is contrary to the evidence. There were ten expert witnesses on both sides, five on each side, giving their opinions as to the damage or benefits accruing to this property as a whole, and the jury heard all this testimony. No attack is made upon the jury's verdict, so far as any misconduct is concerned, but, sitting here as judge, I am asked to review this testimony and to say that the evidence does not preponderate in favor of this verdict—that is, the evidence preponderates against the verdict.

"After a full consideration, hearing this case argued, and hearing all the witnesses testify, I do not believe I am prepared to say that I do not approve the verdict of the jury. I think there should be an end to litigation, and I think, at least, the whole question in this case revolves ground whether or not the charge I gave to the jury was a sound exposition of the law; and if it is not, it can be very easily corrected by the Supreme Court. And to give a new trial now, the same ground would

have to be gone over again, because I certainly would adhere to my charge, unless the Supreme Court should decide otherwise.

"In view of the whole case, I see no reason to disturb the verdict, and the motion for a new trial is overruled."

If the sentence "I do not believe I am prepared to say that I do not approve the verdict of the jury" is not as strong as it might be if fewer words were used, it cannot be said that the conclusion is not clear and emphatic: "In view of the whole case, I see no reason to disturb the verdict and the motion for a new trial is overruled." If he sees no reason to disturb the verdict, he must be satisfied with it, and he must think it is supported by the preponderance of the evidence. The use of the phrase "I think·there should be an end to litigation" was perhaps unfortunate in that the connection in which it was used did not explain its meaning. What the judge meant, we take it, was that even if there was a new trial, his charge would be the same and this being so, the verdict would be the same. His idea evidently was that if there was any error it was in his charge to the jury to consider the land as a whole, and that if that was right, the verdict was right also.

It results that all assignments of error are overruled and the judgment of the lower court is affirmed. Plaintiffs will pay the costs of appeal.

Owen and Senter, JJ., concur.